**In re Herbert & Wilda KELLY, Debtors.**

**RTL HOLDINGS CORP., Plaintiffs,**

**v.**

**Herbert & Wilda KELLY, Defendants.**

**Bankruptcy No. 83–01400–BKC–TCB.**
**Adv. No. 83–0840–BKC–TCB–A.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 9, 1983.

Curtis Witters, West Palm Beach, Fla., for plaintiffs.

Allen R. Tomlinson, Vero Beach, Fla., for defendants.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The plaintiff/creditor seeks judgment on its claim against the debtors and exception of that claim from discharge under 11 U.S.C. § 523(a)(4). The debtors have answered. The matter was tried on November 29.

Plaintiff is a freight broker for truckers. It employed the debtor/husband in March, 1979 as an agent. There was no written contract of employment. There were no written instructions concerning the agency before February 21, 1980. The evidence is in conflict as to the authority and instructions given Kelly.

I find that Kelly was authorized and instructed to accept freight shipments on behalf of the plaintiff, place those shipments with independent truckers (including his own trucking entities), complete a bill of lading on plaintiff's form, insert the appropriate charge, and advance payment to the trucker on plaintiff's checks to cover the trucker's expenses.

The bill of lading contained the following notation:

"DRIVER COLLECT CHECK PAYABLE TO CBX IN THE AMOUNT OF $ IF ANY PROBLEM, CONTACT CBX JACKSONVILLE, FLA."

When the trucker returned with a receipted bill of lading, Kelly was authorized to give the trucker a check for the balance of the freight charge, less the advance previously given and less a 10% brokerage charge, 60% of which was payable to plaintiff and the remaining 40% constituting Kelly's only compensation. Kelly was directed to send the completed bill of lading, together with a copy of the settlement check drawn on plaintiff's account, to the plaintiff and plaintiff would remit Kelly's commission to him if and when plaintiff received payment for the shipment.

Notwithstanding the clear directive on the bills of lading, in many instances payment for freight was made directly to Kelly, one of his trucking companies or a third party trucker. Kelly was never instructed to maintain a separate account to clear such funds nor did he ever do so.

When Kelly was employed, he had been in the trucking business for 21 years and was acting as a broker for his own trucking companies. He was expected to, and did draw on his existing contacts with shippers and truckers and use his own trucks in generating business for plaintiff. He was successful in doing so and was consistently among the plaintiff's leading agents.

The loose arrangement governing the agency led to instances where plaintiff became convinced that Kelly had pocketed freight payments without reporting receipt of payment and without accounting to plaintiff for its share of the commission and had abused his authority to issue advances, particularly to his own trucking companies. On February 21, 1980, a supervisor instructed Kelly by memorandum that all future freight payments must be made payable to plaintiff and forwarded immediately. Kelly could not, of course, prevent a trucker's acceptance of a check from a consignee made payable to someone other than the plaintiff. The directive, therefore, was not enforced. I find that on at least some occasions, both before and after the directive, Kelly requested, encouraged and accepted payment made directly to him or one of his trucking companies. Plaintiff continued to tolerate this conduct, no doubt because Kelly was a successful and profitable agent for plaintiff.

On November 3, 1980, after an informal auditing conference between the parties, Kelly and his wife signed a note payable to plaintiff for $31,729. That sum admittedly represented freight payments payable to plaintiff received and spent by Kelly without authority. The note provides for payment over a 7 month period to commence one month later. It is stipulated that $21,272 has been paid or credited on that note, leaving a present balance of $10,457.

Notwithstanding the foregoing history, Kelly was not discharged and continued to act for plaintiff.

Section 523(a)(4) excepts from discharge any debt:

**642**

"for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

Since 1841, when a provision similar to this one first appeared, it has been consistently limited to technical or express trusts. *Matter of Angelle,* 610 F.2d 1335, 1338 (5th Cir.1980). As an authoritative commentator has correctly noted:

"Thus, unless there be some additional fact, § 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to fraud of agents, bailees, brokers, factors, partners, and other persons similarly situated. *Collier on Bankruptcy* (15th ed.) ¶ 523.14[1][c]."

I hold that neither debtor was acting in a fiduciary capacity within the scope of § 523(a)(4).

Plaintiff relies upon *Arnold v. Employers Insurance of Wausau,* 465 F.2d 354 (10th Cir.1972), which involved a district manager for an insurance company who had failed to remit premiums to his company and had converted them to his own use. The court affirmed a judgment declaring the debt nondischargeable under an earlier version of § 523(a)(4). It is clear that the point argued was that the acceptance by plaintiff of a note for the debt took the debt out of the operation of the statutory provision. This contention was rejected. It does not appear that the debtor's fiduciary status was questioned. If the decision constitutes a holding that an agent who fails to remit funds to his employer and converts them to his own use is a fiduciary under § 523(a)(4), I am bound by the contrary holding in *Angelle.*

If plaintiff can prove that the debt owed to it results from embezzlement or larceny, plaintiff need not prove that it occurred in a fiduciary capacity. However, there is no evidence before me of larceny. It is conceded that the debtors' original possession of plaintiff's property was lawful.

Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *Collier on Bankruptcy* (15th ed.) ¶ 523.14[3].

I find that plaintiff has failed to carry its burden of proving felonious intent. There is no evidence here that the debtors made any effort to hide or conceal their diversion of these funds. The amount involved, though substantial, represented a very small part of the total funds generated by Kelly's agency which reached as much as $150,000 a month. The diverted funds were not used for personal expenses but were used exclusively to meet the expenses of Kelly's trucking companies. I accept his testimony that he expected and intended to pay that part of the commission owed to his employer. Plaintiff's continued tolerance of Kelly's conduct justified his understanding that he had the right to use freight payments, subject only to his obligation to account for plaintiff's share of the commission. His ultimate financial inability to do so does not constitute embezzlement.

As is required by B.R. 9021(a), separate judgment will be entered dismissing this complaint. Each party shall bear its own costs.