In re Gary Steven EPPERSON, a/k/a
Gary Epperson, d/b/a Epperson
Firearms & Co., Debtor.

Thomas E. CREBBS, Jr., d/b/a the
Grouse Gun Exchange, Plaintiff,

v.

Gary Steven EPPERSON, d/b/a
Epperson Firearms & Co.,
Defendant.

Bankruptcy No. 3–84–00261.

Adv. No. 3–84–0171.

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 15, 1985.

James M. Crain, Knoxville, Tenn., for plaintiff.

Jenkins & Jenkins, Michael H. Fitzpatrick, Knoxville, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

## I

At issue is the dischargeability of a debt in the amount of $5,180.00 arising from the consignment of some 75 firearms by the plaintiff Crebbs to the defendant Epperson. Trial was held October 24, 1984.

Crebbs is a licensed firearms dealer operating the Grouse Gun Exchange. Epperson, also a licensed firearms dealer, is a commercial pilot who also owned and operated Epperson Firearms & Co., a sole proprietorship. The parties have engaged in business dealings involving firearms for about two years. No problems existed until the fall of 1983.

On or about August 30, 1983, Crebbs delivered to Epperson some 75 firearms to be sold by him under a consignment agreement whereby Crebbs would receive a certain price for each weapon sold. Ex. 1. During the course of 1983 and early 1984, Epperson sold several of the firearms. In January 1984, Epperson contacted Crebbs and informed him that a number of firearms had been sold and that he needed documents of title to properly transfer the firearms to the new owners. Crebbs refused to provide these documents until he received payment for the firearms sold. After some negotiations, Crebbs agreed to and did transfer these documents in return for two post-dated checks, Exs. 2, 3, representing the prices Crebbs was to have received from 10 guns theretofore sold by Epperson. The first checks were presented to Epperson's bank on or after the dates indicated (January 23, 1984, $1,200.00; January 31, 1984, $1,760.00) but the checks were returned unpaid due to insufficient funds.

On or about February 20, 1984, Crebbs went to Epperson's place of business and recovered the bulk of firearms which had been left with Epperson. He was unable to locate, however, seven (7) firearms and a bullet mold.

On February 23, 1984, Crebbs addressed a letter to Epperson advising him of the returned checks and requesting payment. Ex. 4. He also advised Epperson that the following guns were missing when he took possession of the consigned guns on February 20 (Epperson was not present at the place of business on that date):

| DESCRIPTION | SERIAL NUMBER | VALUE[1] |
|---|---|---|
| 12 Ga. Browning BPS Pump | 05755RP112 | $ 275 |
| 12 Ga. Parker VH Trap Gun | 140957 | 1,125 |
| 12 Ga. Stevens Model 311 double | C637504 | 155 |
| 20 Ga. Boito (ERA) O/U | 36550 A | 125 |
| .22 Cal. Colt "Ace" Semi-Auto, NIB | SM 39624 | 350 |
| .44 Cal. Virginian Dragoon SS, NIB | S22722 | 175[2] |
| .38 SP. WC Double-Cavity Bullet Mold | | 15 |
| | | $2,220 |

This amount ($2,220) is now due and payable.

In this letter, Crebbs demanded payment of the two dishonored checks within ten (10) days and stated that the remainder of the debt could be satisfied by any mutually agreeable substitution of goods or services rendered before March 10, 1984.

Crebbs' claim of $5,180.00 consists of two parts: (1) $2,220.00, the value of the missing guns, and (2) $2,960.00 representing the total of the two dishonored checks.

## II

Crebbs asserts nondischargeability under §§ 523(a)(2)(A) and (B); 523(a)(4);

---

**1.** Value is the amount Crebbs was to receive when the gun was sold.

**2.** This firearm was later returned to Crebbs by the trustee in bankruptcy.

and 523(a)(6).[3] At the trial on a complaint objecting to discharge or dischargeability, the plaintiff has the burden of proving his objection. Bankruptcy Rule 4005. Further, objections to the discharge of a debtor are to be construed liberally in favor of the debtor.

Crebbs concedes that Epperson had "unfettered power of disposition—i.e., he could sell a firearm for cash, trade it for another firearm, and make any other disposition he desired—so long as the agreed-upon price was returned to Plaintiff [Crebbs] following that disposition." Crebbs' post-trial brief, (pages unnumbered). Further, "[t]here was no regular occasion for paying these proceeds—it would be done when Plaintiff [Crebbs], as he frequently did, would stop by Defendant's [Epperson's] establishment." *Id.* Crebbs knew the proceeds from the sale of the firearms were going into Epperson's operating account. This arrangement had worked satisfactorily prior to the August 30, 1983, transaction.

In the fall of 1983, Epperson was encountering financial difficulties and two or more creditors, including the Department of Revenue of the State of Tennessee, levied attachments on his cash register receipts. For several months prior to closing the business, Epperson was on a C.O.D. arrangement with his suppliers. Epperson was not without income, however. Although the firearms operation was apparently losing money, he still had income from his employment as a pilot. Also, when he gave Crebbs the post-dated checks, he was expecting a substantial refund from income tax overpayments.

On November 7, 1983, when Crebbs and Epperson went over the list of guns, Epperson stated that some of the guns were at his residence. Ultimately, all of the guns were recovered (or Crebbs holds unsatisfied checks for the "value" of the guns) except the six involved in the present controversy. One of the guns involved is a 12-gauge Parker VH Trap Gun with a "value" of $1,125.00.[4] It is the uncontroverted testimony of Elizabeth Smith, who managed the gun shop for Epperson, that she mistakenly sold this firearm on November 8, 1983, to one Dillard E. Evans for $275.00. Upon learning of the mistake Epperson attempted to repurchase the gun for a greater amount but was unable to do so.

On March 14, 1984, Epperson filed a petition in bankruptcy, scheduling some $45,000.00 in unsecured debts.

### III

Crebbs cannot prevail under § 523(a)(2)(A) and (B). He has failed to show that Epperson obtained property or services by false pretense, a false misrepresentation, actual fraud, or a materially false statement in writing. Epperson gave Crebbs post-dated checks for the documents of title. There is no proof from which the court can find that Epperson did not intend to cover those checks. Crebbs knew the checks were not good at the time he took them and, in fact, agreed to contact Epperson before depositing them in the

---

**3.** A discharge ... does not discharge an individual debtor from any debt—

    .    .    .    .    .    .    .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
    (A) false pretenses, a false representation, or actual fraud, ...
    (B) use of a statement in writing—
    (i) that is materially false;
    (ii) respecting the debtor's or an insider's financial condition;
    (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

    .    .    .    .    .    .

(4) for ... embezzlement, ...

    .    .    .    .    .

(6) for willful and malicious injury by the debtor to another entity or to be property of another entity; ....

11 U.S.C.A. § 523(a)(2)(A) and (B)(4), (6) (1978).

**4.** As heretofore stated, "value" is the amount Crebbs was to receive when a gun was sold by Epperson.

bank. As heretofore stated, Epperson had other income from which the checks could have been covered. A broken promise, certainly; fraudulent conduct sufficient for a finding of nondischargeability, no.

As further grounds for a holding of nondischargeability, Crebbs alleges "embezzlement." Section 523(a)(4).

 To "embezzle" means willfully to take, or convert to ones own use, another's money or property, of which the wrongdoer acquired possession lawfully by reason of some office or employment or position of trust. Black's Law Dictionary, Fifth Edition. To prove embezzlement, one must establish "fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." *In re Gumieny*, 8 B.R. 602, 605 (Bankr.E.D. Wisc.1981). Further, the party alleging an embezzlement under § 523(a)(4) must prove the elements of embezzlement by clear and convincing evidence. *In re Sutton*, 39 B.R. 390, 395 (Bankr.M.D.Tenn.1984).

Clearly, the facts in this case do not support a finding of embezzlement. It is not disputed that the defendant had unfettered discretion to sell the firearms for cash, goods, services or any combination thereof. Thus, the sale of the firearms created nothing more than a debt. Nor was there a fiduciary relationship as to the resulting funds.

Plaintiff concedes that he cannot prevail under T.C.A. § 39–3–1121 which sets forth the statutory definition of embezzlement.[5]

Finally, plaintiff asserts the debt is nondischargeable as a "willful and malicious" injury to his property. Section 523(a)(6). The conversion of another's property without his knowledge or consent, done intentionally and without an excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception. On the other hand, a technical

conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge. *Collier on Bankruptcy*, 15th Ed., Vol. 3, § 523.16. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393.

The facts heretofore set forth negate any finding of a willful and malicious conversion.

Defendant's debt to the plaintiff arising from the consignment of firearms is a dischargeable debt.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

5.  Embezzlement.—Any officer, agent, employee or clerk of any incorporated company, or any clerk, employee or agent of a copartnership or private person, who embezzles or fraudulently converts to his own use any money or property of any other, which has come to his possession, or is under his care by virtue of such employment, shall, on conviction, be punished as in case of larceny. T.C.A. § 39–3–1121.