**In the Matter of Mark Edward MICHEL, Charlene Lucille Michel, Debtors.**

**Charles G. SKEMP, Plaintiff-Appellee,**

**v.**

**Mark Edward MICHEL, Defendant-Appellant.**

**No. C85–3188–A.**

United States District Court, N.D. Ohio, E.D.

June 17, 1986.

John P. Van Abel, Charles P. Leb, Amerman, Burt & Jones Co., Canton, Ohio, for plaintiff-appellee.

James R. Kandel, Canton, Ohio, for defendant-appellant.

## ORDER

BELL, District Judge.

Appellant Mark Edward Michel has timely appealed the ruling of the bankruptcy court entered in the Chapter 7 bankruptcy proceeding captioned *In re Michel*, (N.D. Ohio 1985). 74 B.R. 80. Debtor-appellant Michel filed for relief pursuant to Chapter 7 of Title 11 of the United States Code on March 5, 1984. Appellee Charles G. Skemp filed a complaint in Michel's bankruptcy proceeding on May 29, 1984, alleging that Michel did not have a right to discharge a certain sum of money owed to him for several reasons, one of which was the nondischargeability of the debt due to embezzlement provided for under 11 U.S.C. § 523(a)(4). The bankruptcy court found that appellant-debtor Michel had embezzled funds from appellee Skemp as the term is used in section 523(a)(4) and that the portion of the debt that was unaccounted for was nondischargeable. Bankruptcy Court Decision at 19–20 (The actual amount of the nondischargeable position was modified by a subsequent order dated August 13, 1985, because of a computational error.). Debtor-appellant appeals this finding as against the manifest weight of the evidence and as unsupportable in view of certain specific factual findings made by the bankruptcy court.

The relationship between the parties to this dispute began in 1982. Debtor-appellant Michel was a real estate salesman who had arranged some real estate investments for a long-time friend of Skemp's, Bill Stimel. Stimel recommended Michel, a real estate broker, to Skemp when he expressed concern over the amount of income tax he had to pay on the salary he earned as a civil engineer. A meeting between Michel and Skemp was held on August 25, 1982 where shelters in real estate were discussed as well as a plan Michel had for investing in the stock market pending the availability of prime real estate investments. Transcript, Vol. I at 40–41, 44–75. Pursuant to his plan of investment, Michel agreed to give Skemp promissory notes for all money turned over and proposed that the profits would be split two-thirds in his favor and one-third in Skemp's in consideration of his lack of risk.

While no commitments were made at the August 25th meeting, the evidence shows that Skemp's wife delivered a check for $50,000.00 to Michel dated August 30, 1982. Michel gave Skemp a promissory note dated August 30, 1982 for $50,000.00 due December 31, 1982 with interest at twelve percent per year. Thereafter, Skemp gave Michel two more checks for $50,000.00 on September 2, 1982 and September 27, 1982 in return for which Michel delivered to Skemp promissory notes having terms identical to the first. On October 14, 1982, a similar exchange was made for $20,000.00 which amount Michel repaid in November, 1982. In summary, by December 31, 1982, Michel held a total of $150,000.00 in Skemp's money.

Skemp's money was deposited into three accounts with Michel's broker, one in Michel's name and the other two in names of two other individuals. The result of Michel's stock trading in 1982 and 1983 was a net loss of $75,121.02. When Skemp sought information about the stock investments in late 1982 and early 1983, Michel at some point returned $30,000.00. He gave a promissory note for the balance on

December 14, 1983. No promised payments were ever made, however, and Michel filed a bankruptcy petition in March, 1984, still owing Skemp $120,000.00.

Michel has not explained where a portion of Skemp's money went. He can account for $75,121.02 in stock market losses of which $8,000.00 was his own. Subtracting the difference, or $67,121.02 from the $120,000.00 of Skemp's money placed in Michel's hands, results in a balance of $52,-878.98. It is this unaccounted-for portion that the bankruptcy court held non-dischargeable.

■ It is clear from section 523(a)(4) and cases interpreting it that if embezzlement is established, a debt is not dischargeable regardless of whether there was a fiduciary relationship between the debtor and the creditor. *In re James*, 42 B.R. 265, 267 (Bkrtcy W.D.Ky.1984); *In re Kelly*, 35 B.R. 640, 642 (Bkrtcy S.D.Fla.1983); *In re Storms*, 28 B.R. 761, 764 (Bkrtcy E.D.N.C. 1983); *In re Shuler*, 21 B.R. 643, 644 (Bkrtcy D.Ida.1982). The bankruptcy court specifically found in this case that there was no fiduciary relationship. Bankruptcy Court Decision at 16. The court agrees with this conclusion which is supported by the evidence. The starting point for analyzing whether Michel embezzled the funds given to him by Michel must be the definition of that term as it has been used in the context of section 523(a)(4). The definition of embezzlement established by the case law is the fraudulent appropriation of property possession of which was obtained lawfully. *In re Epperson*, 45 B.R. 708, 711 (Bkrtcy E.D.Tenn.1985); *In re James*, 42 B.R. at 266. The party alleging embezzlement under section 534(a)(4) has the burden of establishing its elements by clear and convincing evidence. *In re Epperson*, 45 B.R. at 711; *In re Storms*, 28 B.R. at 765. The elements which must be so proven are (a) that debtor appropriated funds for his own benefit and (b) that he did so with fraudulent intent or deceit. *In re James*, 42 B.R. at 267. While both elements may be established by circumstantial evidence, *id.*, the mere unexplained absence of funds is insufficient circumstantial evidence to

establish embezzlement under the clear and convincing standard. *In re Sutton*, 39 B.R. 390, 395–96 (Bkrtcy M.D.Tenn.1984). However, the unexplained absence of funds coupled with a showing of sole access to the funds may meet this burden. *Id. citing United States v. Walker*, 677 F.2d 1014 (4th Cir.1982). *See also United States v. Powell*, 413 F.2d 1037, 1038 (4th Cir.1969).

■ In this case, it is undisputed that Michel received Skemp's money lawfully. Skemp gave them to him for the purpose of stock market investment with the expectation that he would receive the money back as well as one-third of any profits. Michel's subsequent use of the funds was without restriction, however and no isolation of money or accounting was required or envisioned. Michel's investments in the stock market resulted in net market losses of $75,121.01. See Bankruptcy Court Decision at Finding of Fact 12. To the extent of these losses, Michel was using the money consistent with his agreement with Skemp and merely a debt is created. Clearly, the amount of $52,878.98 of Skemp's money is missing and completely unexplained by Michel. The bankruptcy court found that this unexplained shortage coupled with the fact that Michel had sole access to the funds constitutes circumstantial evidence sufficient to establish fraudulent intent. The court finds this conclusion supported by the record.

The simple facts are that Skemp handed Michel $150,000.00 for the sole purpose of investment in the stock market. Michel traded in three accounts, one in his own name, two under the names of Thomas Shatzer and Alice Snyder. While these individuals had to sign for transactions in their accounts, Michel testified that all of the activity was at his direction and with Skemp's funds. See Transcript, Volume 1, 73–89. Michel testified that these individuals did no trading on their own account during the relevant period. *Id.* He suffered a net loss in excess of $75,000.00 and cannot explain the absence of the remainder of Skemp's money. He thus had sole access to the funds and there is a substantial shortage of which he cannot explain.

On these facts, this court affirms the bankruptcy court's finding that Michel embezzled the unexplained portion of the funds which renders it nondischargeable in bankruptcy. This appeal is thus dismissed.

IT IS SO ORDERED.