**Dennis SAVONAROLA and Thomas Savonarola, Plaintiffs,**

v.

**Patrice B. BERAN, Defendant.**

**Bankruptcy No. 86–9098.**

United States Bankruptcy Court, N.D. Florida, Gainesville Division.

Oct. 29, 1987.

Karen Specie, Gainesville, Fla., for plaintiffs.

J. Michael Davis, Gainesville, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS MATTER came on to be heard upon the complaint to determine non-dischargeability of a debt allegedly due plaintiffs from the debtor, Patrice Beran. The complaint is based on Sections 523(a)(2) and (a)(4) of the Bankruptcy Code. An amended complaint was thereafter filed asserting as an additional basis for non-dischargeability of the debt, § 523(a)(6). Upon consideration of the record and evidence adduced at trial, the Court makes the following findings of fact and conclusions of law.

Plaintiffs Thomas and Dennis Savonarola own a residence in Gainesville, Florida which had in the past been occupied by Thomas Savonarola. Upon his relocation, the plaintiffs decided to rent the premises. In 1983, they hired Robert Beran then husband of defendant Patrice Beran, who lived adjacent to the premises and with whom Thomas Savanorola was acquainted, to manage the Gainesville rental property. The parties agreed that a management account would be established into which all rental proceeds were to be deposited. From this account, Robert Beran was authorized to deduct a $30.00 per month management fee and any approved expenses for maintenance of the premises. The balance of the account was to be remitted to the Savonarolas. The Berans (Robert and Patrice) had a pre-existing joint account at the Gainesville Florida Campus Credit Union, and rather than creating a separate segregated account for the rental proceeds as discussed with the plaintiffs, the Berans, without the plaintiff's knowledge, utilized this existing account to conduct the rental business. In addition to rental proceeds from plaintiff's house, Patrice Beran periodically deposited student loan proceeds she received into the credit union account. Robert Beran also used the account as a vehicle for repaying a loan to the credit union through payroll deduction. This resulted in a net monthly deposit of $3.00 to the account. Thus, plaintiffs' funds were co-mingled with those of the Berans.

In 1984, the Berans on behalf of the Savonarolas, rented the house for $400 per month. The new tenants worked at the same location as Patrice Beran and she normally collected the rent from them and made the deposits.

Around August of 1984, the plaintiffs advised the Berans that they wished to install a central heating and air conditioning unit in the rental premises. They authorized the Berans to retain in the rental account the excess rental proceeds over management fees and maintenance expenses rather than forwarding that sum to them; they further instructed that when the retained sum reached $3,000.00, the estimated cost of the purchase and installation of the unit, the Berans were to have the job done and pay for it from the rental account. By the end of 1984, there had accumulated the sum of $1,338.81, as reflected by an accounting rendered by Robert Beran to the Savonarolas.

During 1985, the plaintiffs made several inquiries of the Berans as to the status of the account, but received little information and no accounting. They later discovered that Patrice Beran had made several large cash withdrawals from the account, depleting it to $65.00 by the end of June, 1985. The central heating and air conditioning unit had not been purchased or installed. The plaintiffs also discovered that the Berans had dissolved their marriage. Thereafter, in June, 1985, the management relationship between the Savonarolas and the Berans was terminated.

The Berans have not contested these facts. They admit that the majority of the funds in the credit union account during the latter half of 1984 and the first half of 1985 were rental proceeds belonging to the plaintiffs; that Patrice Beran had signatory power on the account; and that Patrice Beran made several cash withdrawals from this account in 1985 without sending the proceeds to the Savonarolas or using them for their benefit. Patrice testified that these withdrawn monies were deposited into a separate joint account of the Berans and used for their personal living expenses at the urging of Robert. The only dispute regarding these unauthorized withdrawals by Patrice Beran is whether her then-husband, Robert, encouraged her to use the funds for the personal expenses or whether he demanded that she stop the withdrawals and replenish the rental account. The Court finds the resolution of this factual dispute unnecessary and immaterial. Patrice Beran had full access to the subject account at all relevant times. She admits to knowing that the majority of the funds therein were not for her personal use, but were the property of the Savonarolas. She nonetheless diverted the funds to a use other than for the benefit of plaintiffs. The depleted account was never replenished and the plaintiffs were never repaid. On February 26, 1986, Patrice Beran filed a Chapter 7 petition in bankruptcy and listed the plaintiff Tom Savonarola as a creditor due the sum of $1,700.00.

Although the plaintiffs originally contended that the defendant, Patrice Beran, obtained money by false pretenses, false representations, or actual fraud pursuant to § 523(a)(2), this legal theory was not pursued at trial and plaintiff's counsel announced the abandonment of that provision as grounds for relief.

Alternatively, the plaintiffs assert § 523(a)(4) and (a)(6) as bases for non-dischargeability of the debt. In pertinent part, these statutory provisions provide for the non-dischargeability of a debt:

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

A fiduciary relationship for purposes of the Bankruptcy Code requires a technical or express trust existing between the parties. *In re Myers*, 52 B.R. 901, 904 (Bkrtcy.E.D.VA 1985); *In the Matter of Hyers*, 70 B.R. 764, 771 (Bkrtcy.M.D.FL 1987); *In re Rigsby*, 18 B.R. 518, 520 (Bkrtcy.E.D.VA 1982). As no such trust was created between the Savonarolas and the Berans, the debtor cannot be found to have committed fraud or defalcation while acting in a fiduciary capacity. However, the claim of embezzlement or larceny under § 523(a)(4) does not require as an element of proof that a fiduciary relationship or express trust exists. *In the Matter of Shuler*, 21 B.R. 643, 644 (Bkrtcy. ID 1982);

*In re Rebhan*, 45 B.R. 609, 614 (Bkrtcy.S. D.FL 1985); *In re Myers, supra* at 905.

■ For purposes of the dischargeability provisions of § 523, embezzlement is defined as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *In re Myers, id* and citations therein; *In re Michel*, 74 B.R. 88, 90 (Bkrtcy.N.D.OH 1987). The elements which must be proven by clear and convincing evidence are (a) that the debtor appropriated funds for his own benefit and (b) that he did so with fraudulent intent or deceit. *In re Michel, id; In re James*, 42 B.R. 265, 267 (Bkrtcy.W.D.KY 1984). Fraudulent appropriation requires an intent to deprive, which can be inferred from the conduct of the person accused and from the circumstances of the situation. *In re Shuler, supra* at 644; *In re James, supra; In re Michel, supra.*

■ In the case *sub judice* the testimony of both Thomas Savonarola and Robert Beran was that the rental proceeds were to be segregated; the plaintiffs requested periodic accountings of the funds in the account; expenditures were not to be made without approval of the plaintiffs; the accumulation of funds in the account was for a specified and communicated purpose. (See, *In re Kelly*, 35 B.R. 640 (Bkrtcy.S. D.FL 1983), *In re Myers, supra,* and *In re Michel, supra,* as to segregated funds). The debtor Patrice Beran was aware of these restrictions and her responsibility to hold the funds. She nonetheless depleted the account for the benefit of either herself alone or both she and her husband with the knowledge that she was not entitled to all of the funds therein. She did not make the plaintiffs aware of this although they inquired as to the status of the account. It must thus be inferred that she intended to deprive the plaintiffs of their funds. The fact that the debtor may have intended only temporarily rather than permanently to deprive the plaintiffs of their funds does not eliminate the inference of intent. *In re Shuler, supra* at 392.

■ The testimony of plaintiff Tom Savonarola established that as of the end of May, 1985, the rental proceeds minus management fees and approved maintenance expenses, should have totaled approximately $2,900.06. Robert Beran, testifying on behalf of plaintiffs, stated that after deductions for repairs during 1985, the account balance should have been $1,600. He testified that there was one repair made that cost $700 although he did not have a receipt. His testimony was not challenged by plaintiffs and he, rather than plaintiffs, had direct knowledge as to the use of the funds. Accordingly, this Court cannot find that those funds in excess of $1,600 were not utilized for the benefit of plaintiffs. Thus the claim is determined to be $1,600.

It having been determined that this debt is non-dischargeable pursuant to § 523(a)(4), the plaintiffs' second grounds for the complaint, § 523(a)(6), need not be addressed. It is accordingly

ORDERED AND ADJUDGED that the claim of plaintiffs Dennis Savonarola and Thomas Savonarola in the amount of $1,600 against the debtor, Patrice Beran, be, and it hereby is, excepted from discharge. The parties shall bear their respective costs.