In re Billy CROSSWHITE d/b/a Cumberland Pizza Investments, Debtor.

Robert E. LEE, Plaintiff,

v.

Billy CROSSWHITE d/b/a Cumberland Pizza Investments, Defendant.

Bankruptcy No. 87–6624–8P7.
Adv. No. 88–0074.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 14, 1988.

Michael P. Brundage, Tampa, Fla., for plaintiff.

David P. Carter, Largo, Fla., for defendant.

## FINDINGS OF FACT CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case, and the matter under consideration is the dischargeability vel non of a debt allegedly owed by Billy Crosswhite (Debtor) to Robert E. Lee (Plaintiff) the Plaintiff who instituted this adversary proceeding. The claim of non-dischargeability is asserted in a three count Complaint. The claim in Count I is based on the allegation that the Debtor committed larceny, or in the alternative "injury to a partnership" (sic) and is based on § 523(a)(4) of the Bankruptcy Code. The claim in Count II is based on an alleged conversion, thus the debt owed should be determined to be nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. In Count III the Plaintiff seeks the imposition of an equitable lien. The Plaintiff abandoned his claims set forth in Count II and Count III and, therefore, only the claim set forth in Count I was tried, and submitted for consideration.

This claim, based on § 523(a)(4) of the Bankruptcy Code, asserts an alleged embezzlement by the Debtor, or in the alternative, a breach of a fiduciary duty by the Debtor.

The facts as developed at the final evidentiary hearing and which are relevant to the remaining issue are as follows:

Prior to the time relevant to the matter under consideration, the Debtor operated several pizza establishments in Fayetteville, N.C. One restaurant operated through C.B.L., Inc., under the trade name of "Pizza Transit Authority"; one through C & B Partnership, and another under the name of "Delivery Express" in Spring Lake through a partnership under the name of "Pizza Delivery Unlimited". On December 11, 1986, the Debtor, the Plaintiff and one David Howell entered into a partnership agreement by which the partnership known as Cumberland Pizza Investment was formed to operate a pizza delivery and take out business on Cliffdale Road in Fayetteville, N.C. (Pl's Exh. 1)

According to the terms of the agreement the Plaintiff and Howell contributed $22,-500.00 each in exchange for a 25% ownership interest in the partnership (Pl's Exh. 21–22). Sometime later Howell conveyed his 25% interest to the Plaintiff. Under the agreement the Debtor was designated to be the managing partner of the store and was granted 50% interest in the partnership in exchange for his services. The agreement further provided that no distribution was to be made to the partners, without the unanimous consent of all partners and the Debtor was not to receive any salary or compensation during the first six months of the operation. It was the duty of the Debtor to maintain and keep the books and records of the business and to furnish a monthly profit and loss statement to the Plaintiff and Howell.

The Debtor opened the store of the partnership some time in January, 1987. Although initially all three partners were placed as signatories on the partnership bank account, the signature card was later changed and the names of the Plaintiff and Howell were removed and the Debtor became the only person with authority to write checks on the partnership bank account.

It appears that the Debtor wrote several checks on the partnership bank account, none of which were to pay the expenses of the partnership. On the contrary, they appear to be funds withdrawn for the Debtor's own personal use even though he was not to receive any compensation during the first six months of operation, and even after that not more than $100.00 per week (Pl's Exh. 1) The record reveals that the

Debtor wrote the following checks on the partnership bank account, all of which were not in payment of any legitimate obligations of the partnership business. In April, 1987, the Debtor drew a check, No. 137, in the amount of $2,000.00, a check which was payable to himself (Pl's Exh. 2). The Debtor claims the check represented a reimbursement of funds advanced by him for the purchase of food for the partnership store. The Debtor was unable to substantiate this claim either by invoices or by any other documentation. On February 16, 1987, the Debtor wrote a check to himself in the amount of $172.33 (Pl's Exh. 10) and another check to himself on July 20, 1987, in the amount of $1,000.00 (Pl's Exh. 6); and several checks totalling $4,094.78 (Pl's Exhs. 4, 5, 11–13). The Debtor also purchased a counter check in the amount of $9,000.00 (Pl's Exh. 8); a check in the amount of $2,159.10 (Pl's Exh. 7) and a check in the amount of $338.26 (Pl's Exh. 18) and also several checks to pay his personal expenses (Pl's Exh. 16–17), including a check written to pay for the painting of his home.

It further appears that not all receipts shown on the daily sheets (Pl's Exh. 19–20) were deposited in the bank account. Thus on June 10, 1987 the daily sheet indicates a receipt in the amount of $515.83 but no trace of a deposit. The same appears for July 20, 1987, the deposit was $120.00 less than the receipts shown on the daily sheet. Between August 10, 1987 and August 15, 1987, the daily sheets show the total receipt of $4,299.00, however, the actual deposit was $2,454.69. Lastly, on August 3, 1987 the daily sheet indicated a receipt of $621.56, but there is no record of a deposit in that amount.

While it is true that an accountant hired by the Plaintiff to examine the records of the partnership also found unexplained deposits totalling $11,000.00, that is, funds which were not reported on the daily sheets, it is clear that the Plaintiff used partnership funds as his own and did without doubt spend substantial sums for purposes other than for the payment of expenses of the pizza store owned and operated by the partnership. For example, the

Debtor specifically claims that a check written by him in the amount of $9,000.00 and drawn on the partnership account on December 12, 1986 was merely a transfer of funds (Pl's Exh. 8). It is true that $5,000.00 of this check was in fact redeposited, but $4,000.00 was placed in a C.D. pledged with the power company to secure the payment of the utility bills of the several other stores controlled by the Debtor. It should be noted that these funds were ultimately lost due to the unpaid utility bills incurred by the stores other than the store operated by the partnership. The Debtor also contends that checks dated May 4, 1987, and June 26, 1987, each in the amount of $2,170.00 (Pl's Exh. 3 & 7) payable to one Phillip Grant were payments on a legitimate obligation assumed by the partnership. For support of this proposition, the Debtor introduced in evidence a copy of a document signed by the Plaintiff (Def's Exh. 1) in which all three partners agreed to assume on behalf of the partnership a debt on the Bragg Boulevard Store and a debt in the amount of $7,750.00 for the purchase of equipment. While the Plaintiff denies that he signed this document, this court is satisfied, after having compared the signature on the document with a sample of his signature, that his signature is, in fact, on the document. Be that as it may, the document is unclear whether the partnership ever actually received the equipment, and there is no question that the partnership never actually acquired any interest in any other stores, including the store on Bragg Boulevard mentioned in the document.

These are the basic facts based on which the Plaintiff's claim of nondischargeability is based, either on the theory of embezzlement or on breach of fiduciary duty, both being grounds for exception to the discharge pursuant to § 523(a)(4), which provides in pertinent part as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

### Embezzlement

■ § 523(a)(4) excepts from the general discharge debts created by embezzlement by the Debtor. This is an independent ground for exception and it is not necessary to establish a fiduciary relationship in order to establish a claim of nondischargeability based on embezzlement. *Applegate v. Shuler (In re Shuler)*, 21 B.R. 643 (Bkrtcy.D.Idaho 1982). Embezzlement has been defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Savonarola v. Beran (In re Beran)*, 79 B.R. 493, at 496 (Bkrtcy.N.D.Fla.1987) *citing, In re Michel*, 74 B.R. 88, at 90 (Bkrtcy.N.D.Ohio 1986).

■ In support of its claim, the Plaintiff particularly relies on *Savoranola, supra*, in which the Debtor was placed in charge of the management of a rental property owned by the Plaintiff. The Debtor, contrary to his agreement, failed to establish a separate account for the rents collected and used some of the rent collected for his own benefit. The difficulty with the Plaintiff's reliance on *Savonarola, supra*, to support his claim based on embezzlement should be apparent even from a cursory examination of the facts of *Savonarola* and the facts involved in the matter under consideration.

In *Savonarola* the funds involved were the funds of the Plaintiff and in the present instance the funds were the funds of the partnership and not the funds of the Plaintiff. Thus, while the partnership, i.e., Cumberland Pizza Investments, no doubt would have a viable claim of nondischargeability against the Debtor based on embezzlement, the Plaintiff does not and cannot prevail unless his claim on the alternative theory, i.e., breach of fiduciary duty is supported by this record.

### Defalcation by Fiduciary

■ Although the definition of "fiduciary" under Section 523(a)(4) is a matter of federal law, bankruptcy courts must consult applicable state law in determining whether a fiduciary relationship exists. *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir. 1986).

■ In this instance, the partnership agreement was entered in North Carolina, the partnership business was operated in North Carolina and the partners were all North Carolina residents. Thus, North Carolina law governs on the question of whether Crosswhite had a fiduciary relationship with and a corresponding fiduciary duty to his partners.

N.C.Gen.Stat. § 59–51 entitled "Partner Accountable as a Fiduciary" states in part:

(a) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

N.C.Gen.Stat. § 59–41 (1987) (adopted in 1941).

Furthermore, N.C. Gen. Stat. § 32–2 entitled "Definitions of Terms" included in the North Carolina Uniform Fiduciaries Act states in part:

... 'Fiduciary' includes a trustee under any trust, express, implied, resulting or constructive, executor, administrator, guardian, conservater, curator, receiver, trustee in bankruptcy, assignee for benefit of creditors, *partner*, agent, officer, of a corporation, public or private, public or private officer, or any person acting in a fiduciary capacity for any person trust or estate ...

N.C. Gen. Stat. § 32–2(a) (1987).

In *Casey v. Grantham*, 239 N.C. 121, 79 S.E.2d 735 (N.C. 1954), the North Carolina Supreme Court said without qualification "it is elementary that the relationship of partners is fiduciary and imposes upon them the obligation of the utmost good faith in their dealings with one another in respect to partnership affairs." *Id.* at 738. *See also, Prentzas v. Prentzas*, 260 N.C. 101, 131 S.E.2d 678 (N.C. 1963) (managing partner has fiduciary duty to render full accounting to partners); *Wolfe v. Hewes*,

41 N.C.App. 88, 254 S.E.2d 204 (N.C. Ct. App. 1979) (Partner is fiduciary to other partners and where deals with partnership property in individual capacity fraud presumed, unless disproved.) This court is not unaware of the general proposition that before one can assert a viable claim based on breach of fiduciary duty under § 523(a)(4), it must establish a relationship ex contractu and not ex maleficio, that the trust must exist prior to the commission of the alleged wrong and not as a result of the commission of the alleged wrong. *See Matter of Angelle*, 610 F.2d 1335 (5th Cir. 1980). Notwithstanding, it is clear that certain relationships have been traditionally recognized to create a fiduciary relationship, either by basic common law principles or by Statute, e.g., attorney/client; corporate officer vis a vis the corporation and the stockholders; general partners vis a vis limited partners; or one partner vis a vis another partner. This is precisely the case in the present instance and this court is satisfied that this fiduciary relationship existed from the very beginning by virtue of creating a partnership and not as a result of the alleged unauthorized use of partnership funds by the Debtor.

This leads to the consideration of the ultimate issue which is whether or not the Debtor was guilty of defalcation while acting in a fiduciary capacity toward his partner, the Plaintiff. For purposes of § 523(a)(4) defalcation while acting in a fiduciary capacity is defined as "the slightest misconduct, and it need not be intentional conduct; negligence or ignorance may be defalcation." *Morales v. Codias*, 78 B.R. 344, at 346 (Bkrtcy. S.D.Fla.1987) *citing, In re Owens*, 54 B.R. 162 (Bkrtcy. S.C.1984).

Further, a defalcation may exist where even the merest deficit is caused by the Debtor's misconduct, even if the Debtor's conduct does not benefit him. *See American Metals Corp. v. Cowley (In re Cowley)*, 35 B.R. 526 (Bkrtcy. D.Kan.1983). Clearly, the definition of defalcation would include the Debtor's failure to account for money or property entrusted to him. *Id.* The cases relied on by the Plaintiff, specifically *Celone v. Dino (In re Dino)*, 82 B.R. 184 (Bkrtcy.D.R.I.1988) and *Ragsdale v. Haller, supra*, provide strong support for the Plaintiff's claims. In *Celone v. Dino, supra*, the Bankruptcy Court found that a partner's unauthorized use of his partner's money constitutes defalcation while acting in a fiduciary capacity. Further, in *Ragsdale v. Haller, supra*, the court found that a partner's breach of fiduciary duty to his partner in failing to disclose to his partner certain bonuses paid to himself from partnership receipts, created a nondischargeable debt pursuant to Section 523(a)(4).

The evidence is clear that based on their partnership relationship, the Debtor owed a fiduciary duty to the Plaintiff. It is equally clear that the Debtor breached that fiduciary duty and committed defalcation as a fiduciary by taking and using partnership funds without the knowledge or consent of his partners.

A separate Final Judgment shall be entered in accordance with the foregoing.