**Joe LAUGHTER, Appellant,**

v.

**C. Douglas SPEIGHT.**

No. 92–5123.

Bankruptcy No. 91–5557.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

May 28, 1993.

William J. Butt, Davis, Cox & Wright, Fayetteville, AR, for appellant.

Jimmy D. Eaton, Eaton & Embry, Little Rock, AR, for appellee.

Claude R. Jones, Trustee, Jones Law Office, Harrison, AR.

## ORDER

HENDREN, District Judge.

NOW on this 28th day of May, 1993, comes on for consideration the appeal of Bankruptcy Judge James Mixon's decision entered on June 23, 1992. 147 B.R. 489. Briefs have been submitted by the parties and the matter is now ripe for determination.

## ISSUES PRESENTED ON APPEAL

The issues presented on this appeal are whether the judgment entered by the Chancery Court of Benton County, Arkansas contained certain findings which were required to be given collateral estoppel effect by the Bankruptcy Court, and if so, whether the Bankruptcy Court erred in not giving them such effect. The relevant portions of the Chancery Court's judgment will be discussed more fully below.

## STANDARD OF REVIEW

The factual findings of a bankruptcy judge are to be reviewed under the clearly erroneous standard. *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310 (8th Cir. 1987); Bankruptcy Rule 8013. The conclusions of law will be reviewed *de novo.*

## ORDER AND JUDGMENT ENTERED BY CHANCELLOR OLIVER L. ADAMS IN BENTON COUNTY, ARKANSAS

On May 10, 1991, Chancellor Oliver L. Adams entered an Order and Judgment in the case between Joe Laughter a/k/a Joseph E. Laughter and Doug Speight a/k/a C. Douglas Speight, after trial on the merits. In his Order, Judge Adams stated that Laughter:

> filed this action to dissolve the P.L. Plastics partnership and seek an order for an accounting from this Court of partnership assets for the purpose of liquidation under Ark.Code Ann. 4–42–405 and 4–42–604(1).

> \* \* \* \* \* \*

> Each partner acknowledged being bound to each other by a fiduciary duty in the conduct of the business of the partnership. Ark. 4–42–404. Such fiduciary duty continues from the date of commencement to the date of dissolution of the partnership.

> \* \* \* \* \* \*

> Therefore, from the facts presented into evidence, LAUGHTER has established by a preponderance of proof that SPEIGHT breached his fiduciary duty to LAUGH-

TER and P.L. Plastics by transacting business for his own profit with the use of P.L. Plastics property without LAUGHTER'S consent. LAUGHTER is entitled to an accounting and judgment for a distributive share of the profits gained by SPEIGHT'S unauthorized conduct. Ark.Code Ann. 4–42–404(1).

\*   \*   \*   \*   \*   \*

The complaint of plaintiff did not allege wrongful conduct by defendant. This is not an action for damages for breach of agreement per Ark.Code Ann. 4–42–610(2)(a)(II).

Judge Adams awarded Judgment in favor of Laughter and against Doug Speight in the sum of $28,430.11 for the breach of fiduciary duty to recoup shared office expense; $707.50 for breach of fiduciary duty and contractual obligations to share profits; $1,042.39 plus interest at the annual rate of 6% per annum, per Ark. Const. art. 19 Sec. 13, from August 7, 1985, in the amount of $359.62 for unpaid loan proceeds; $200,000.00 being 50% of present value of P.L. Plastics, plus interest.

## HEARING BEFORE THE BANKRUPTCY JUDGE

A review of the transcript of the hearing held before Judge Mixon prior to the entry of his Memorandum Opinion reflects the following occurred at the hearing:

1. Counsel for appellant presented his position in opening statement. In summary, counsel for appellant stated that his client, Joe Laughter and Doug Speight became engaged in a sales rep business together. In the early 80's, they entered a written partnership agreement which assigned the sales and bookkeeping and financial responsibilities to Speight and the manufacturing and assembling processes to Laughter. The business prospered in the early and mid–80's and the parties realized hundreds of thousands of dollars a year in net profits. Their relationship deteriorated in the mid–80's and they reached the conclusion that they ought to wrap the business up. Laughter understood that Speight was going to wind down their business, sell the remaining inventory and pay the loans. Counsel for Laughter stated that without Laughter's knowledge or consent, Speight then began a new business and began to use the same address, phone number, packaging plants, raw material suppliers, and buyers as well as to take the same orders he'd always taken for all the same products they'd always sold in the previous business. The new business was called SHD. At that point, Laughter filed a petition for accounting in the Benton County Chancery Court, and the case went to trial in the spring of 1991 and was tried before Judge Adams.

As evidence in support of his position, appellant filed as an exhibit the Order and Judgment entered by Judge Adams on May 10, 1991. No other evidence was presented by counsel for appellant. In his argument to the bankruptcy judge, counsel for appellant urged that the Order and Judgment issued by Judge Adams was conclusive proof that the debt in question was not dischargeable. He argued that a recent Supreme Court ruling required the Court to give the Memorandum Opinion *res judicata* effect, and accordingly, the bankruptcy court should find that the debt was non-dischargeable as fraudulent.

2. Counsel for appellant requested that the bankruptcy court first determine whether *res judicata* applied. If the bankruptcy judge determined that it did not apply to the particular issue of the goodwill portion of the judgment (an amount of $200,000.00), he asked the bankruptcy court for leave to present evidence on that issue at a later date.

3. The bankruptcy judge denied appellant's request and stated as follows:

Mr. Butt, we follow the Rules of Civil Procedure as far as trial procedures, and that's not the way a trial is conducted. Today is the day that's set for trial, and it's up to you to determine in your mind what evidence to present. I've never bifurcated a trial like that. I certainly couldn't over his [appellee's] objection.

You know, it's a tricky business whether or not collateral estoppel applies in some cases, so, you know, and I have no way of knowing. I don't know anything about the case. But that request then will have to be denied.

Counsel for appellant then determined that he would present no further evidence, and the judge took the matter under advisement.

### BANKRUPTCY JUDGE'S MEMORANDUM OPINION

In his Memorandum Opinion, Bankruptcy Judge Mixon made certain findings regarding the dischargeability of a debt which was the subject of a complaint before him, as follows:

> The only evidence presented by Laughter on the issue of dischargeability was a copy of an "Order and Judgment" entered by the Chancery Court of Benton County, Arkansas. The judgment was entered on May 10, 1991, in favor of Laughter against the debtor in the sum of $230,539.62, plus interest. The debtor offered no evidence.

> Laughter has not satisfied the four criteria necessary to apply the doctrine of collateral estoppel. The only pleading introduced into evidence from the state court proceeding was the order and judgment. This Court is unable to determine from this one pleading whether the issue sought to be precluded is the same as the issue involved in the state court action and whether the factual determinations made by the state court were essential to the judgment.

The bankruptcy judge then went on to refer to certain findings made by the chancellor:

\* \* \* \* \* \*

> The state court chancellor, Hon. Oliver L. Adams, did make several findings that would be important to a dischargeability issue. For instance, he found that "Speight breached his fiduciary duty to Laughter and P.L. Plastics by transacting business for his own profit with the use of P.L. Plastics [sic] property without Laughter's consent." From this finding, Judge Adams concluded that Laughter was entitled to an accounting and a distributive share of profits gained by Speight's unauthorized conduct. However, the Court went on to state, "The complaint of [Laughter] did not allege wrongful conduct by [the debtor]. This is not an action for damages for breach of agreement per Ark. Code Ann. 4–42–610(2)(a)(II). The Uniform Partnership Act provides rules for distribution of the partnership property."

> Judge Adams also found that, "without Laughter's knowledge or consent, Speight through the business entity SHD, usurped the remaining business assets and ongoing operation of P.L. Plastics for his own personal benefit and profit."

\* \* \* \* \* \*

> Laughter did not specify which paragraph of 11 U.S.C. Section 523 he relies on in asserting that his debt should be nondischargeable. The subsections of 11 U.S.C. Section 523 that might be applicable in this case appear to be as follows: ...

> Laughter's lack of specificity makes is [sic] impossible for the Court to determine if the issue sought to be precluded is the same issue involved in the prior litigation. In addition, the record is [sic] insufficient to determine if the factual determinations rendered by the state court were essential to the judgment actually rendered. Therefore, the doctrine of collateral estoppel cannot be applied in this action.

> Laughter offered no other evidence to support a finding of nondischargeability. Therefore, the complaint objecting to the dischargeability of Laughter's debt is denied.

### ARGUMENTS ON APPEAL

In his brief, counsel for appellant states that the issue before this court is whether the Bankruptcy Court erred in not giving collateral estoppel effect to those elements of the nondischargeability claim that were identical to the elements required for discharge and which were actually litigated and determined in the prior action in Chancery Court. More specifically, appellant argues that the Bankruptcy Court erred as follows:

1. In considering the application of collateral estoppel to dischargeability proceedings in light of the underlying policy of bankruptcy laws to provide the debtor with a fresh start;

2. When it stated that appellant did not specify which paragraph of 11 U.S.C. Section 523 he relies on in asserting his debt should be nondischargeable;

3. By relying on case law which predated *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct.

654, 112 L.Ed.2d 755 (1991) in determining adequacy of state court record.

*Bankruptcy Judge's finding regarding application of collateral estoppel*

Appellant argues that the elements set forth in *In re Chapman*, 125 B.R. 284 (Bankr.S.D.Cal.1991), which allows application of collateral estoppel in bankruptcy proceedings, have been established.[1] In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the United States Supreme Court held that collateral estoppel principles apply in discharge exception proceedings pursuant to 11 U.S.C. § 523(a). § 523(a)(4) states:

> A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity. . . .

a. *Elements required in Chapman— identity of parties; prior litigation of issues; particular issue essential to prior judgment; and identity of issues*

It does not appear to be disputed that the first element—identity of parties—is present. The remaining issues—prior litigation of issues; particular issue essential to prior judgment; and identity of issues; present more of a problem. Appellant concedes the Chancellor did not use the terms "defalcation" or "fraud" in describing Speight's action. However, appellant argues that the court stated in its findings that appellee debtor took monies from the partnership for his own benefit without authority and converted assets of the partnership to his own use, and that Speight's conduct, as described in the Chancellor's findings of fact, clearly constitutes defalcation. Appellant contends the bankruptcy court erred in considering the application of collateral estoppel to dischargeability proceedings "in light of the underlying policy of bankruptcy laws to provide the debtor with a fresh start," and that under *Grogan*, the fresh start approach applies in those instances involving an *"honest but unfortunate debtor."*[2]

The issue to be decided in *Grogan* was whether § 523(a) of the Bankruptcy Code required a defrauded creditor to prove his claim by clear and convincing evidence in order to preserve it from discharge rather than by a preponderance of the evidence. Unlike the case at bar, the respondent in *Grogan* did not challenge the conclusion that the elements of the fraud claim proved in the first trial were sufficient to establish "fraud" within the meaning of § 523.

The Court is of the opinion that the claim of "defalcation" by Speight, who owed a fiduciary duty to Laughter, was presented to the Chancellor. The Chancellor specifically found that Speight breached his fiduciary duty and took monies from the partnership for his own benefit without authority and converted assets of the partnership to his own use. It was Speight's breach of his fiduciary duty to Laughter and P.L. Plastics which led the Chancellor to conclude that Laughter was entitled to an accounting and judgment for a distributive share of the profits gained by Speight's unauthorized conduct. Therefore, the issue of defalcation by Speight, who owed a fiduciary duty to Laughter was squarely before and was decided by the Chancellor. Such a breach of fiduciary duty has been found sufficient to constitute "defalcation" under the bankruptcy code. *In re Chris J. Roy*, 130 B.R. 214 (Bankr.W.D.La.1991), *aff'd* 143 B.R. 825

---

**1.** In *In re Chapman*, 125 B.R. 284, 286 (Bankr. S.D.Cal.1991), the court held that to apply collateral estoppel in dischargeability proceedings, the creditor must establish the following elements:
1) the party against whom estoppel is asserted must have been a party to the prior adjudication and actively participated in the litigation;
2) the issue that forms the basis for estoppel must have been actually litigated and determined on the merits;
3) the determination of the particular issue must have been necessary or essential to the court's judgment; and

4) the issue to be precluded is identical to the issue in the former action.

**2.** Appellant also argues that the bankruptcy court relied on pre-*Grogan* cases which applied a higher burden of proof, and are not applicable to the case at bar. On this point, the Court is not persuaded, since the bankruptcy judge clearly was aware of the burden of proof standard set forth in *Grogan* since he cited it in his opinion.

(Bankr.W.D.La.1992) ("defalcation" occurred even though attorney may have subjectively believed that his duty to former partners terminated with discharge of former partnership by clients); *In re Schwenn,* 126 B.R. 351 (Bankr.D.Colo.1991) (debt arising out of one joint venturer's failure to remit to other venturer her share of royalties derived from oil and gas leases was nondischargeable in bankruptcy, as one arising out of first joint venturer's "defalcation while in fiduciary capacity."); *In re Oot,* 112 B.R. 497 (Bankr. N.D.N.Y.1989) ("Defalcation may be established even though debtor's failure to account for money he received while acting in fiduciary capacity was through ignorance or negligence.") *In re Crosswhite,* 91 B.R. 156 (Bankr.M.D.Fla.1988) (managing partner's debt to fellow partner, arising out of his failure to properly account for money and property entrusted to him, was nondischargeable in bankruptcy as debt arising out of debtor's defalcations while acting in fiduciary capacity).

As stated by appellee, the concept of fiduciary duty is defined by federal law. However, state law is to be consulted to determine when a trust relationship exists. *In re Schwenn,* 126 B.R. 351 (Bankr.D.Colo.1991). Appellee has not disputed that the parties assumed responsibilities pursuant to the terms of a written partnership agreement. As the Chancellor found, the parties acknowledged the existence of the fiduciary relationship. Additionally, a fiduciary relationship was created by statute in Ark.Code Ann. § 4–42–404(1). Finally, under Arkansas common law a trust was created when the partnership was formed. *Boswell v. Gillett,* 226 Ark. 935, 295 S.W.2d 758 (1956).

As indicated above, the third element of *Chapman*—particular issue essential to prior judgment—was clearly met. The Chancellor's finding that appellee "breached his fiduciary duty to appellant and PL Plastics" was the basis for his determination that appellant was entitled to an accounting and judgment due to Speight's unauthorized conduct.

Finally, the fourth element of *Chapman*—identity of issues—was met. In the case before the Chancellor as well as in this case, appellant had to prove that the defendant committed fraud or defalcation and that defendant was acting in a fiduciary capacity.

*In re Jolly,* 124 B.R. 365, 367 (Bankr. M.D.Fla.1991). Therefore, these issues were squarely addressed in the state action.

The bankruptcy court also held that Laughter's lack of specificity as to which paragraph of 11 U.S.C. § 523 he relied on in asserting that his debt should be nondischargeable made it impossible for the court to determine if the issue sought to be precluded is the same issue involved in the prior litigation. A review of the transcript of the hearing held before the bankruptcy court shows that although counsel for appellant did not specifically mention § 523(a)(4) at the hearing, he did discuss the question of whether fraud was involved. In appellant's post-trial brief in support of objection to dischargeability, and in appellant's reply brief, he did mention § 523(a)(4) on several occasions.

The Court finds that the facts presented to the bankruptcy court did, in fact, justify the application of collateral estoppel under *Chapman,* and that the bankruptcy court erred in not so doing. Therefore, this Court finds that the bankruptcy court erred in denying appellant's nondischargeability of debt complaint. The Court therefore reverses the bankruptcy court and finds that judgment should be entered on the basis of collateral estoppel, denying the dischargeability of appellee's debt to appellant. A Judgment will be entered accordingly.

IT IS SO ORDERED.