466 P.2d 794

Moses KADISH and Doris R. Kadish,
husband and wife, Appellants,

v.

PHX.–SCOTTS. SPORTS COMPANY, an
Arizona corporation, and Frank Farella,
individually and on behalf of the other
stockholders of Phx.-Scotts. Sports Compa-
ny, Appellee.

No. I CA–CIV 1047.

Court of Appeals of Arizona,
Division 1.
Department B.
March 25, 1970.

D'Antonio & Videen, by Garven W. Videen, Tucson, for appellants.

Lewis, Roca, Beauchamp & Linton, by John P. Frank, Gerald K. Smith, Michael J. LaVelle, Phoenix, for appellee.

JACOBSON, Judge.

The liability of officers and directors of a corporation for allegedly unauthorized expenditures for non-corporate purposes is presented in this appeal from the Superior Court of Maricopa County.

On November 4, 1964, plaintiff-appellee, FRANK FARELLA, hereinafter referred to as Farella, filed a stockholders' derivative suit against defendants-appellants, MOSES. KADISH and DORIS R. KADISH, his wife, seeking judgment for funds allegedly diverted from plaintiff-appellee, PHX.-SCOTTS. SPORTS COMPANY, an Arizona corporation, hereinafter referred to as the "corporation." On the same day a like suit was filed by the corporation against defendants seeking the same relief. The two cases were consolidated for trial which resulted in judgment being granted to the corporation against the defendant MOSES KADISH for the sum of $31,600.-00 and against defendant DORIS KADISH for the sum of $8,000.00.

On October 23, 1962, the corporation was formed for the purpose of operating retail sporting goods departments in two Govway Department Stores located at that time in Phoenix and Scottsdale, Arizona. At the time of incorporation, Farella and defendant Doris Kadish each owned 50% of the issued voting stock of the corporation. The four members of the Board of Directors of the corporation consisted of Farella, defendants Doris Kadish and Moses Kadish and one William Stein, the latter owning 1,000 shares of non-voting stock of the corporation. Farella became the president, Mr. Stein the vice-president, and defendant Doris Kadish the secretary-treasurer. The by-laws of the corporation required a majority of voting shares for a quorum at a stockholders' meeting and a majority of the directors for a quorum at a directors' meeting.

Defendant Moses Kadish, in addition to being a director of plaintiff-corporation, was president and principal stockholder of Govway Corporation, plaintiff-corporation's lessor. He was also a 50% stockholder of a corporation called Esskay, that corporation also being a lessee of Govway Corporation. Govway Corporation owned at least 50% of a third corporation, Kemco Department Store.

After the formation of the corporation, the active management of the corporation was placed in the hands of the defendant Doris Kadish. Farella was primarily concerned with supplying the corporation's stock in trade, his main business being, both prior to and after the corporation was formed, in the wholesale sporting goods business. Both defendants were authorized to sign the corporation's checks.

The evidence disclosed that approximately two months after the formation of plaintiff-corporation a check in the sum of $29,000.00 was drawn on its account by defendant Moses Kadish and payable to him. The evidence further disclosed that this check was subsequently deposited to the account of Kemco Department Stores. Two additional checks in controversy were drawn on plaintiff-corporation's account, one in the sum of $2,600.00 made payable to Govway Department Stores dated June 25, 1963, and signed by defendant Moses Kadish, and one in the sum of $8,000.00, made payable to Esskay Sales, dated April 30, 1963, and signed by defendant Doris Kadish.

While all parties agree that these disbursements were never authorized at a directors' meeting, there is a sharp conflict in the evidence as to the knowledge of the other members of the Board as to these disbursements. The defendants contend that Farella had knowledge of these disbursements prior to their being made and that he approved them. Farella testified that he first became aware of these checks in October, 1963, by reason of an audit of the corporate books being conducted by Farella's accountant.

Defendants further contended that these disbursements were for a valid business purpose, that is, Govway was experiencing financial difficulties and these were loans to keep the corporation's lessor in business in order to secure the continued advantageous position of the corporation with Govway. This corporate purpose contention, of course, was hotly denied by Farella.

In December of 1963, Farella made demand upon the defendants to repay to the corporation the total of the checks. At this time defendant Doris Kadish delivered physical possession of her stock to Farella. As to the exact status of this stock, the record is not clear. It does appear, however, that subsequent to the delivery, Doris Kadish attempted to sell her stock to a third person.

After the December meeting, the defendants were removed from the corporation's checking account and the accounting records were placed in the possession of Farella's accountant. Farella subsequently took steps to collect these sums from the various corporations which received them and entered into negotiations with the defendants for their purchase of these accounts at a discount. All collection efforts proved fruitless and in October, 1964, a notice of a stockholders and directors meeting was sent to the defendants for a meeting to be held on November 4, 1964. None of the defendants appeared at this meeting. Inasmuch as a quorum was lacking nothing transpired. The two lawsuits involved here were filed on the same date.

On March 16, 1967, and prior to the trial in this matter, both defendants were discharged in bankruptcy. Both defendants listed the respective claims of the corporation against them on their schedules in bankruptcy.

The basic questions raised by defendant's appeal are as follows:

(1) Does the evidence support the finding of the trial court that the disbursements in controversy were unauthorized expenditures of corporate funds for a non-corporate purpose?

**578**

(2) Assuming the evidence supports this finding, did the corporation, through Farella, ratify these expenditures?

(3) Were the statutory procedures properly followed for the filing of the stockholder's derivative suit by Farella?

(4) Did the defendants' discharge in bankruptcy bar the corporation's claim against them?

 As to the defendant's first contention, Arizona appellate courts have on numerous occasions trumpeted the normal scope of our appellate factual review and it seems to continually fall on deaf ears— appellate courts will not disturb the factual findings of the trial court if based on conflicting evidence. E. g., Gangadean v. Flori Investment Co., 11 Ariz.App. 512, 466 P.2d 63 (Filed March 10, 1970); Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456 (1945). Moreover, appellate courts will not substitute their findings of fact for those of the trial court, if there is any reasonable evidence to support the trial court's findings. Sheeley v Sheeley, 10 Ariz.App. 318, 458 P.2d 522 (1969); Donahue v. Babbitt, 26 Ariz. 542, 227 P. 995 (1924).

 Here, the evidence was diametrically opposed as to whether defendants told Farella of these disbursements of corporate funds prior to their being expended and whether Farella approved of these expenditures. Having read the transcript, we are of the opinion that there is sufficient evidence to support the trial court's finding that in fact the expenditures were unauthorized and therefore this finding will not be disturbed on appeal.

The defendants further argue that these expenditures were for a corporate purpose, that is, to keep its lessor solvent and therefore keep the corporation in business. They therefore argue from this premise that their conduct, while causing a loss to the corporation, was merely the result of mistakes in judgment which should not make them liable to the corporation.

 Whether a corporate expenditure is for a corporate purpose is normally a question of fact. 19 C.J.S. Corporations § 959 (1940). The corporation here was in the stated business of retailing sporting goods. The original capitalization of the corporation was $10,000.00. Approximately two months after its formation $29,000.00 of its funds were disbursed to defendant Moses Kadish and subsequently transferred to a corporation in which he had a financial interest. Within eight months after its formation, an additional $10,600.00 was disbursed to corporations in which defendant Kadish had a financial interest. Thus in a period of eight months after the corporation was formed, a sum equal to approximately four times its original capitalization was expended to corporations who were neither customers nor suppliers of the corporation. In such a situation we are of the opinion that the trial court was justified in finding that these expenditures were for non-corporate purposes.

 It is generally true that officers and directors of a corporation are not personally liable for mere errors of judgment while acting in good faith within the scope of the corporation's business. Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022 (1937). However, where as here, officers and directors engage in transactions outside the ordinary scope of the corporate business they are responsible for losses occurring as a result of their unauthorized acts. Tovrea Land and Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47 (1966); 3 W. Fletcher, Private Corporations Sec. 1021 (perm. ed. rev. v. 1965). This is especially true where the acts of an officer or director smack of self-dealing. In such a case the officer or director has the burden of proving the fairness of the transaction to the corporation to which they owe a fiduciary duty. Ong Hing v. Arizona Harness Raceway, Inc., 10 Ariz.App. 380, 459 P.2d 107 (1969); Tovrea Land and Cattle Co. v. Linsenmeyer, supra.

 Defendants next contend that assuming these expenditures were unauthor-

ized, and were for a non-corporate purpose, the corporation through the acts of Farella ratified the expenditures and therefore waived the right to proceed against them individually. Waiver is one of those defenses which must be affirmatively pled, Rule 8(b), Arizona Rules of Civil Procedure, 16 A.R.S. (1956), and the party urging these defenses has the burden of proving them. Lakin Cattle Co. v. Engelthaler, 101 Ariz. 282, 419 P.2d 66 (1966). Defendants by their answer fail to plead either waiver or ratification as a defense. This defect aside, the evidence is consistent with Farella continuously attempting to collect the unauthorized expenditures from the corporation actually receiving the same and holding the defendants personally liable for these funds, and inconsistent with waiver or ratification. The defendants not only failed to plead these defenses, they also failed to sustain their burden of proof as to them and therefore their contention in this regard is without basis.

■■■ Defendant's next contention deals with the failure of Farella to meet the requirements of Rule 23(b), Arizona Rules of Civil Procedure, 16 A.R.S. (1956) in filing a stockholder's derivative suit in the corporation's name. While the defendants also list as one of the issues on appeal the failure of the corporation to follow statutory procedures in maintaining a suit in its own name against them, they failed to argue or point out in what particulars this failure occurred and therefore this issue must be deemed to have been abandoned. Brockmueller v. State, 86 Ariz. 82, 340 P.2d 992 (1959). Since the stockholder's derivative suit of which they complained was consolidated with a suit in the corporation's name, objections to which are deemed abandoned, and since the relief granted by the trial court would be proper under either complaint, we hold that the question of whether Rule 23(b) was properly complied with in the derivative suit is moot.

Defendants' last contention deals with their discharge in bankruptcy. Section 17 (a) (4) of the United States Bankruptcy

Act (11 U.S.C.A., Bankruptcy Sec. 35(a) (4) (1953), specifically exempts from a discharge in bankruptcy those debts "created by fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." Plaintiff contends the acts of defendants fall within this exemption.

It would appear that this section of the Bankruptcy Act intended to exempt from a discharge in bankruptcy certain debts created by certain express conduct having generally the connotation of wrongfulness, but in a descending order of culpability. Thus, if defendant's acts can be classified as a "defalcation," the lesser of the evils listed, it would appear that the debt created by the conduct of the defendants would not be discharged by the bankruptcy proceedings.

■■■ A defalcation clearly requires acts amounting to misconduct or reflecting bad faith, and not merely inadvertence, mistake or negligence. Western Surety Co. v. Reed, 79 N.M. 647, 447 P.2d 672 (1968); Ivy v. Plyler, 246 Cal.App.2d 678, 54 Cal. Rptr. 894 (1966). But the conduct does not have to be criminal or malicious, only willful and wrongful. Bannon v. Knauss, 57 Ohio App. 288, 13 N.E.2d 733 (1937).

■■■ What defendant's argument basically turns on here is the same argument previously made, that is, that their acts were for a valid corporate purpose and therefore their conduct, while subjecting the corporation to a loss, was merely the result of negligence, innocent mistake or inadvertence. As we have previously stated, the trial court correctly determined that the use of the corporation's funds were in fact not for a valid corporate purpose and were unauthorized. It therefore follows that the defendant's conduct was improper and wrongful as to the corporation, to which, in their capacity as an officer and a director, they owed a fiduciary duty. Ong Hing v. Ariz. Harness Raceway, Inc., supra.

We therefore hold that the conduct of defendants in the handling of the corporation's funds amounted to a defalcation and

**580**

a breach of their fiduciary duty. As was stated In Re Adelson, 187 Misc. 691, 65 N.Y.S.2d 162 (1946):

"* * * [T]he turning of corporate funds to a wrongful purpose or the use of funds by a fiduciary for a purpose other than proper, is a misappropriation or defalcation as those terms are used in the Bankruptcy Act and that the debt arising therefrom is not discharged by a release in bankruptcy. * * * [And] that such terms are not confined to intentional acts in order to make the provisions of Section 17, sub. a (4) applicable." 65 N.Y. S.2d at 163.

The judgment of the trial court is affirmed.

EUBANK, P. J., and HAIRE, J., concur.