**In re R. Bruce REEVES, Debtor.**

**BAMCO 18, Plaintiff,**

v.

**R. Bruce REEVES, Defendant.**

**Bankruptcy No. 89–498.**
**Adv No. 90–1026.**

United States Bankruptcy Court,
D. New Hampshire.

Nov. 21, 1990.

Nathan T. Foose, Gray, Wendell & Clark, Manchester, N.H., for R. Bruce Reeves.

Sharon C. Boyle, Sheehan, Phinney, et al., Manchester, N.H., for BAMCO 18.

## MEMORANDUM OPINION

JAMES· E. YACOS, Bankruptcy Judge.

The plaintiff-creditor in this chapter 11 bankruptcy proceeding seeks a determination that its debt from the debtor is nondischargable under §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6) of the Bankruptcy Code. The debtor was allegedly a limited partner in a partnership in which the plaintiff was a limited partner. The debtor was also allegedly the owner of a corporation that was the sole general partner of the limited partnership.

 Under § 523(a)(2)(A) the plaintiff will be able to bar the discharge of its debt if it can show the requisite fraudulent conduct on the part of the debtor. Under § 523(a)(6) the debtor will be able to bar discharge of its debt if it can show that the debtor willfully injured its property rights. The present matter before the Court, prior to trial, relates to the Count of the complaint based on § 523(a)(4) in which the plaintiff seeks to bar discharge of its debt on the ground that the debtor as a partner was a "fiduciary" for purposes of that section. Under that statutory provision, the debtor if determined to be such a "fiduciary" can have his debt nondischarged not only in terms of fraud or willful injury actions but also on the grounds of "defalcation" of a fiduciary. As the caselaw defines this concept, defalcation can be shown by simply proving that a fiduciary failed to return property or account for same, even though no fraud, embezzlement, or even misappropriation on the part of the fiduciary is shown. See, e.g., *In re Selenske*, 103 B.R. 200, 204 (Bankr.E.D.Wis.1989); *In re Crosswhite*, 91 B.R. 156, 160 (Bankr.M. D.Fla.1988) In short, "innocent" conduct can constitute defalcation.

### I. *The Concept of Fiduciary Under § 523(a)(4) Generally*

The defendant has filed a motion to dismiss the Count based upon § 523(a)(4) on the grounds that the debtor merely as a partner is not within· the strict meaning of a "fiduciary" as developed by the caselaw with regard to this statutory provision. The caselaw development begins with *Davis v. Aetna Insurance Company* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). In the *Davis* case, the statutory provision construed barred discharge of debts created by "fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." This statutory provision is essentially identical to § 523(a)(4) of the present Bankruptcy Code. The Supreme Court in the *Davis* case was dealing with a debtor who was an automobile dealer who obtained automobiles from the creditor under "trust receipt" financing documents and failed to pay over the funds received from one of the automobile sales prior to filing bankruptcy. The creditor contended that the debtor-dealer was acting in a fiduciary capacity and his discharge should be barred due to his failure to account for and pay over the funds involved prior to bankruptcy. The Supreme Court rejected the contention that the use of "trust" language on

some of the documents involved was not determinative and that it would examine the entire transaction in reaching a conclusion as to whether a "fiduciary" capacity under the bankruptcy statute was involved. The Court concluded that it was not inasmuch as the course of conduct between the parties and the entire package of documents involved revealed that essentially a secured lender-borrower relationship was involved.

The Supreme Court in *Davis* gave the definitive definition of "fiduciary" in the pertinent bankruptcy statute which is binding upon this Court.

The respondent contends that irrespective of wilfulness or malice, the petitioner is within the exception declared by subdivision 4, his liability arising, it is said, from his fraud or misappropriation while acting in a fiduciary capacity. The meaning of these words has been fixed by judicial construction for very nearly a century. *Chapman v. Forsyth,* 2 How. 202 [11 L.Ed. 236], decided in 1844, is a decision to the effect that within the meaning of a like provision in the Act of 1841, a factor does not act in a fiduciary capacity; the statute "speaks of technical trusts, and not those which the law implies from the contract." 2 How. at p. 208. The scope of the exception was to be limited accordingly. Through the intervening years that precept has been applied by this court in varied situations with unbroken continuity. *Neal v. Clark,* 95 U.S. 704 [24 L.Ed. 586]; *Hennequin v. Clews,* 111 U.S. 676, 682 [4 S.Ct. 576, 579, 28 L.Ed. 565]; *Noble v. Hammond,* 129 U.S. 65, 68 [9 S.Ct. 235, 236, 32 L.Ed. 621]; *Upshur v. Briscoe,* 138 U.S. 365 [11 S.Ct. 313, 34 L.Ed. 931]; *Crawford v. Burke* [195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147], *supra; Tindle v. Birkett* [205 U.S. 183, 27 S.Ct. 493, 51 L.Ed. 762], *supra.* Cf. *Cronan v. Cotting,* 104 Mass. 245; *Clair v. Colmes,* 245 Mass. 281, 139 N.E. 519. It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio.* He must have been a trustee before the wrong

and without reference thereto. In the words of Blatchford, J., "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created." *Upshur v. Briscoe, supra,* [138 U.S.], at p. 378 [11 S.Ct. at p. 317].

[293 U.S. at 333, 55 S.Ct. at 153–54]

The Supreme Court in *Davis* referred to its earlier decision in *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844). That was the first decision to examine and clarify the meaning of the term "fiduciary" as used in a bankruptcy statute having language similar to the present provisions of § 523(a)(4):

The second point is, whether a factor, who retains the money of his principal, is a fiduciary debtor within the act. If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied but special trusts, and the "other fiduciary capacity" mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act.

▮ Thus, the decisions from the Supreme Court make it clear that technical trusts, not implied trusts, are those that lead to a nondischargeable debt. Another principle established by the Supreme Court that suggests a narrow federal definition of "fiduciary" should be used is that bank-

ruptcy is designed to provide debtors with a fresh start. See *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Consequently, discharge statutes are generally strictly construed in favor of the debtor. See 3 Collier on Bankruptcy § 523.05A; *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Rahm,* 641 F.2d 755, 756–57 (9th Cir.) cert. den. 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); *In re Tinkham,* 59 B.R. 209, 217 (Bankr.D.N.H.1986).

Turning back to section 523(a)(4), however, there are special concerns with it because of the broad definition of defalcation. This was explained in *In re Gans,* 75 B.R. 474, 490 (Bankr.S.D.N.Y.1987) as follows:

> The rationale for applying such a strict, well-defined interpretation to fiduciary debts within the meaning of Section 523(a)(4) can perhaps be explained by the corresponding broad definition of fiduciary defalcation. Having once established that a fiduciary relationship exists, it merely need be shown that the underlying trust fund was used for a purpose other than that contemplated by the trust to constitute defalcation. *See, e.g., In re Matheson,* 10 B.R. 652, 656 (Bankr. S.D.Ala.1981).

Proof of defalcation does not require evidence of any intentional wrong by the debtor. Whereas fraud under the Bankruptcy Code "refers to positive fraud, involving moral turpitude," *In re Materetsky,* 28 B.R. [499] at 502 [ (Bankr.S.D.N.Y.1983) ], defalcation is broadly defined to include "the failure of a fiduciary to account for money he received in his fiduciary capacity" regardless of the fact that such failure may have resulted from ignorance or negligence. *In re Wolfington,* 47 B.R. [762] at 764 [ (Bankr.E.D.Pa.1985) ] (it "is irrelevant that the default by the fiduciary was innocent"); *In re Gonzales,* 22 B.R. 58 (Bankr. 9th Cir.1982); *In re Owens,* 54 B.R. [162] at 165 [ (Bankr.D.S.C.1984) ]. *See, e.g., Hamby v. St. Paul Mercury Indemnity Co.,* 217 F.2d 78 (4th Cir.1954) (real estate agent's misappropriation of entrusted funds is

defalcation); *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937) (money used by a receiver in mortgage foreclosure action allocated to him prior to expiration of time for appeal constitutes defalcation); *In re Livingston,* 40 B.R. 1018 (E.D.Mich.1984) (insurance agent's failure to remit premiums constitutes fiduciary defalcation); *In re Wolfington,* 47 B.R. 762 (Bankr.E. D.Pa.1985) (real estate agent's use of escrow funds is breach of fiduciary duties).

The importance of a clear understanding of the meaning and broad scope of the "defalcation" concept is underscored by the discussion by Judge Learned Hand referred to by Judge Votolato in *In re Cairone,* 12 B.R. 60, 62 (Bankr.D.R.I.1981):

> In *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937), Judge Learned Hand noted that although, colloquially, the word "defalcation" ordinarily implies some moral dereliction, in a bankruptcy context it may include innocent default, including all fiduciaries who for any reason were short in their account. *Id.,* at 511. Construing § 17(a)(4) of the Bankruptcy Act of 1898, 11 App.U.S.C.A. § 35(a)(4), (1979), the predecessor to § 523(a)(4), Judge Hand, writing for the Second Circuit, held "that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time it may, he is guilty of a 'defalcation' though it may not be a 'fraud,' or an 'embezzlement', or perhaps not even a 'misappropriation.' " *Id.* at 512. The *Herbst* decision affirmed a ruling by the district court, 22 F.Supp. 353 (S.D.N.Y.1937), which defined "defalcation" as "the failure of one who has received moneys in trust to pay it over as he ought. It is a broader word than fraud, embezzlement and misappropriation and covers cases where there was no fraud, embezzlement, or willful misappropriation on the part of the bankrupt." *Id,* at 354. *See also, Union Mutual Life Insurance Co. v. Murphy,* 9 B.R. 167 (Bkrtcy.E.D.Va.1981); *In re Newman,* 2 BCD 894 (S.D.N.Y.1976); *United States*

*Fidelity and Guaranty Co. v. Burn,* 2 BCD 1299 (E.D.Pa.1976). Similarly, in *First Citizens Bank and Trust Co. v. Parker,* 225 N.C. 480, 35 S.E.2d 489, 492 (1945) defalcation was viewed as "the failure of a fiduciary to account for money received in his fiduciary capacity."

■ Consequently, the term "fiduciary" in the Bankruptcy Code is narrower than the word as used under state law. The Court in *In re Cairone, supra* at 62 explained as follows:

The traditional definition of a "fiduciary" is not applicable in bankruptcy law. The general meaning—a relationship involving confidence, trust and good faith—is far too broad. The fiduciary relationship referred to in § 523(a)(4) has been held to be limited to express and technical trusts. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The characteristics of an express trust include an explicit declaration of the creation of a trust, a clearly defined trust res, and an intent to create a trust relationship, 89 C.J.S. Trusts § 22, at 734–35. The trustee's duties must be independent of any contractual obligations between the parties and must be imposed prior to, rather than by virtue of, any claim of misappropriation. *Davis v. Aetna Acceptance Co., supra; Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *Besroi Construction Corp. v. Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977); 1A Collier on Bankruptcy paragraph 17.–24, at 17.-08 (14th ed. 1976). Thus, implied or constructive trusts and trusts ex maleficio, i.e., trusts imposed because of wrongdoing on the part of the person to be charged as trustee, Black's Law Dictionary 1356 (5th ed. 1979), are not susceptible to the establishment of a fiduciary relationship under the Code. *Davis v. Aetna Acceptance Co., supra; In re Thornton,* 544 F.2d 1005 (9th Cir.1976); *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937). Similarly, ordinary commercial relationships such as creditor-debtor and principal-agent have been held not to create a fiduciary relationship in the bankruptcy

context. *Angelle v. Reed,* 610 F.2d 1335 (5th Cir.1980); *Devaney v. Dloogoff,* 600 F.2d 166 (8th Cir.1979).

## II. *Partners as Fiduciaries under § 523(a)(4)*

■ Turning to the decisions deciding whether a partner is a fiduciary for purposes of section 523(a)(4), I find compelling those decisions that recognize the federal definition is vastly narrower than the state definition. In *In re Lewis,* 94 B.R. 406, 409, 410 (Bankr.E.D.Va.1988), for example, the Court said:

While under partnership law the relationship between partners may be a fiduciary relationship, courts interpreting the predecessor statutes to the present § 523(a)(4) did not give the term "fiduciary" the same broad meaning. Since the statutory provision making nondischargeable debts arising from the defalcation of a fiduciary first appeared in the Act of 1841, it has consistently been limited in its application to technical or express trusts as distinct from the defalcation of agents, bailees, brokers, factors, partners, and other persons similarly situated. See 3 Collier on Bankruptcy Paragraph 523.14[1][c] (15th ed. 1986). See also, *In re Tocci,* 34 B.R. 66, 9 C.B. C.2d 636 (Bankr.S.D.Fla.1983); *Hurlbert v. Drake,* 5 B.R. 149 (Bankr.D.Idaho 1980). Courts held that partners were not "fiduciaries" within the meaning of these statutes. The courts construed the term "fiduciary" so narrowly because the term "defalcation," unlike fraud was construed to include not only conduct involving bad faith or intentional wrongdoing but also the mere failure to account for funds entrusted to the fiduciary.

\* \* \* \* \* \*

This Court is convinced that the term "fiduciary" as used in 11 U.S.C. § 523(a)(4) is limited to the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors, or public officers and, absent special considerations, does

not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners. As such the alleged indebtedness at issue in this case is not a debt for defalcation while acting in a fiduciary capacity.

See also *In re Stone*, 91 B.R. 589 (D.Utah 1988); *In re Lang*, 108 B.R. 586 (Bankr.N. D.Ohio 1989); *In re Braudis*, 86 B.R. 1001 (Bankr.W.D.Mo.1988); *In re Holman*, 42 B.R. 848 (Bankr.E.D.Mo.1984).

I realize that many lower court decisions following the *Davis* decision have in effect ignored the Supreme Court's teaching regarding technical and express trusts. Currently, a majority of the decisions simply look to state law to see if some fiduciary obligation in a generalized sense has been created. Once that is established, these courts essentially assume the federal definition is the same. See, e.g., *Ragsdale v. Haller*, 780 F.2d 794, 796–97 (9th Cir.1986), ("California has made all partners trustees over the assets of the partnership. Accordingly, we hold that California partners are fiduciaries within the meaning of § 523(a)(4)"). See also *In re Short*, 818 F.2d 693 (9th Cir.1987) (Washington law); *In re Mailath*, 108 B.R. 290 (Bankr.N.D. Okl.1989); *In re Blatnik*, 101 B.R. 718 (Bankr.E.D.Okla.1989); *In re Selenske*, 103 B.R. 200 (Bankr.E.D.Wis.1989); *In re Guy*, 101 B.R. 961 (Bankr.N.D.Ind.1988); *In re Crosswhite*, 91 B.R. 156 (Bankr.M.D.Fla. 1988) (North Carolina Law); *In re Dino*, 82 B.R. 184 (Bankr.D.R.I.1988); *In re Owens*, 54 B.R. 162 (Bankr.D.S.C.1984); *In re Kraus*, 37 B.R. 126 (Bankr.E.D.Mich.1984).[1]

This approach in my judgment does not give proper attention to the narrowness of the federal definition of fiduciary.[2] The federal law is aimed only at the express trust situation in which the debtor either expressly signified his intention at the outset of the transaction, or was clearly put on notice by some document in existence at the outset, that he was undertaking the special responsibilities of a trustee to account for his actions over and above the normal obligations that contracting parties have to each other in a commercial transaction. The concept of "incorporation by reference" of various state law duties labeled as fiduciary obligations does not serve to further the purpose encompassed by § 523(a)(4) of the Bankruptcy Code. A recent case supporting this logic is *In re Holmes*, 117 B.R. 848 (Bankr.D.Md.1990). In that case a subcontractor claimed a trust relationship within the meaning of § 523(a)(4) existed between it and the contractor due to the existence of a state statute—the Maryland construction trust statute. The court rejected this position stating:

This Court disagrees with the [*In re*] *Marino* [115 B.R. 863 Bankr.D.Md. 1990)] decision inasmuch as it held that the statute created an express trust. The Maryland Construction Trust Statute imposes a trust upon the performance of an act (the payment of funds) irrespective of the intentions of the parties and therefore is a trust implied in law....

The intention of the Maryland Legislature regarding dischargeability *vel non* is irrelevant. The supremacy of Federal law over state law requires that the discharge in bankruptcy prevail over a state statute for the protection of subcontractors.

\* \* \* \* \* \*

A statutory trust is a legislative creation and is therefore not an express trust in the absence of an intention by the parties to create a fiduciary agree-

---

1. It should be noted that other courts have looked to state law and found state law did not create a fiduciary duty among partners that would implicate § 523(a)(4). See *In re Weiner*, 95 B.R. 204 (Bankr.D.Kan.1989); *In re Napoli*, 82 B.R. 378 (Bankr.E.D.Pa.1988) (New Jersey law); *In re Ryan*, 90 B.R. 554 (Bankr.S.D.Fla. 1988); *In re Hurbace*, 61 B.R. 563 (Bankr.W.D. Tex.1986).

2. If I were to conclude otherwise, and find that state law is controlling, I recognize there is a decision holding New York law creates a fiduciary relationship between partners thus making a partner's claim against a debtor nondischargeable under section 523(a)(4). See *In re Stone*, 94 B.R. 298 (S.D.N.Y.1988). However, as explained in this opinion, I believe this reasoning is faulty because the state law is being used to *imply* a fiduciary relationship when one was not expressly created by the parties.

ment between themselves. A statutory trust cannot be a technical trust in the absence of the execution of a formal trust agreement between the parties. In this regard, there is no perceivable difference, for bankruptcy purposes, between a trust implied in law by a court and one enacted in law by a legislature.

\* \* \* \* \* \*

Because the creation of an express trust depends upon the intention of the parties, an express trust can never be created by statute alone.

*Id.* at 852–53.

Accordingly, since defalcations can in fact be "innocent" in nature, as indicated above, and if not innocent will most likely be nondischargeable on fraud grounds directly under § 523(a)(2) of the Code, it would frustrate the policy of the Code in giving the honest debtor a fresh start to equate the state definition of fiduciary with the federal definition in construing § 523(a)(4) of the Code. I, therefore, will follow the minority rule.[3]

### Conclusion

The Defendant is not a fiduciary to the plaintiff for purposes of Section 523(a)(4). The federal definition is limited to an express or implied trust and none exists here on the facts alleged.

### ORDER

For the reasons contained in the Memorandum Opinion filed contemporaneously it is hereby:

ORDERED, ADJUDGED and DECREED as follows:

1. Defendant's motion to dismiss Count II is granted.

DONE and ORDERED.

---

3. Of course, if I am correct in my reading of the *Davis* case the Supreme Court plus one consti-