In re Donald DUCEY, Joanna Ducey, Debtors.

Donald DUCEY, Joanna Ducey, Plaintiffs,

v.

Brian DOHERTY, Defendant.

Bankruptcy No. 92–1418.
Adv. No. 92–1118.

United States Bankruptcy Court,
D. New Hampshire.

Sept. 29, 1993.

Victor Dahar, Manchester, NH, for plaintiffs.

Robert G. Tetler, Hampton, NH, for defendant.

Steven Darr, c/o Ernst & Young, Boston, MA, Trustee.

### MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The above-captioned proceeding was tried before the Court on July 23, 1993 on a complaint brought pursuant to 11 U.S.C. § 523(a)(4) to determine that a $10,000 "debt" resulting from a court-ordered disgorgement of a retainer fee is nondischargeable. The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(a). This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The following constitutes the Court's findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

### Facts

On or about March 1, 1991 the plaintiffs filed for bankruptcy protection under Chapter 11. Their petition was prepared and filed by the defendant. As part of the petition for relief, the defendant disclosed pursuant to § 329 and Rule 2016(b) that he had received a pre-filing payment of $10,000 plus an additional $500 as the expense for filing the chapter 11 petition. Further, in a standard boiler-plate reference to the possibility of additional fees, the 2016(b) disclosure statement said that in addition to the $10,000 retainer, the plaintiffs had agreed to pay: "additional compensation as allowed by the Court pursuant to applications for payment of professional fees."

At some point it came to pass that not only was the plaintiffs' chapter 11 proceeding off track, but in fact their attorney, the defendant, had filed for bankruptcy relief himself on May 4, 1992. Prior to the defendant's petition, the Court had issued an order to show cause on October 11, 1991 in the plaintiffs' chapter 11 proceeding as to why the defendant should not be compelled to disgorge the $10,000 retainer. By Order entered October 31, 1991 the Court ordered the defendant to turn over the $10,000 retainer to the estate to be held by the plaintiffs as debtors-in-possession for the purpose of re-

taining new counsel to complete their reorganization. It was the Court's intention then, as now, that the money turned over be used to provide a retainer for a new attorney to shepherd the plaintiffs' bankruptcy to completion. In that same October 31, 1991 Order, the Court required the United States Trustee to file a report and recommendations as to the time and manner in which the defendant would repay the $10,000 retainer.

Then, on November 15, 1991, after receipt of the United States Trustee's report, the Court approved the same and overruled the defendant's objection. The November 15, 1991 Order was a final order and directed the defendant to turn over $10,000 to the plaintiffs' subsequent counsel within seven days. The defendant failed to pay over the $10,000 within seven days and appealed the November 15, 1991 Order as well as this Court's denial of his motion for stay pending appeal. On August 3, 1992 Senior District Court Judge Martin F. Loughlin dismissed the defendant's appeal.

In his own bankruptcy petition, at Schedule F, "Creditors Holding Unsecured Nonpriority Claims," the defendant listed the plaintiffs. In the schedule, the defendant listed the amount of the claim as $10,000, that it was incurred on October 15, 1991 for the provision of legal services, and that it was disputed and unliquidated. In addition to the above, the defendant claimed a setoff right of $2,552.89. Then on August 11, 1992 the plaintiffs filed the complaint which is the subject of this adversary proceeding. That complaint claimed the debt owing to the plaintiffs resulting from this Court's disgorgement order was nondischargeable under § 523(a)(2)(A) or 523(a)(4). At a continued pretrial hearing held on March 23, 1993 the Court heard argument on the defendant's motion to dismiss. After hearing, the Court granted the defendant's motion to dismiss the 523(a)(2)(A) ground and trial was limited to the 523(a)(4) count only. Trial was held on July 23, 1993 and the matter was taken under advisement at that time.

The sorry story of this sordid affair really came to a head at the hearing held on October 11, 1991 on the Court's Order to Show

Cause to disgorge the $10,000 retainer. At that October 11, 1991 hearing the Court granted the defendant's motion to withdraw as counsel for the plaintiffs. At the same time, the defendant asked for attorney's fees nunc pro tunc. At that hearing the United States Trustee raised her objection as to the allowance of any attorney's fees, much less nunc pro tunc. She also raised the fact that the defendant had taken additional sums post-petition from third parties without disclosing the compensation to the Court. See Transcript of hearing on Motion to Withdraw as Attorney for the Debtors; Continued status of stipulation orders for adequate protection; and Order to Show Cause to Disgorge portion or all fees of the attorney for the debtors, at page 9. Plaintiffs' Exhibit No. 9.

During the Court's examination of the plaintiffs at the October 11, 1991 hearing it came to light that not only had the defendant failed to carry them through their chapter 11 proceeding to completion as he had promised when he took the $10,000 prefiling retainer, but later, when he left New Hampshire and relocated to Florida, he put the plaintiffs in contact with another lawyer in the seacoast area who demanded an additional $7,500.00 to accept their case. Plaintiffs' exhibit 9, transcript at page 17. It was the plaintiffs' direct testimony that "we got charged for letters from attorney Doherty that he was telling us that he was going to drop the case unless we gave him more money." Plaintiffs' exhibit 9, transcript at page 16, lines 4 through 6.

In response to examination by the United States Trustee at the October 11th disgorgement hearing, the plaintiffs responded that they had paid the $10,000 retainer in cash without a written fee agreement. Plaintiffs' exhibit 9, transcript at pages 27–29. It is the plaintiffs' theory that the defendant was acting in a fiduciary capacity at the time he entered into their representation and took the $10,000 retainer. See Complaint to Determine Dischargeability of Debt, ADV Doc. No. 1 at paragraph 12. In his answer, the defendant admitted that there was an attorney-client relationship, but he denied that the $10,000 retainer that was ordered refunded is a nondischargeable debt. Defendant's answer at paragraph 7. Thus, distilled to its essence, the issues this case presents the Court are (1) whether the existence of the attorney-client relationship between plaintiffs and defendant imposed a fiduciary duty upon the defendant with respect to the $10,000 retainer; and (2) whether the defendant's failure to pay over the retainer as ordered by this Court results in a nondischargeable debt arising from the defalcation by the defendant while in a fiduciary capacity as that concept has been interpreted by cases decided under 11 U.S.C. § 523(a)(4).

The defendant urges this Court to apply the reasoning of the Arizona appellate court in *Kadish v. Phoenix–Scotts Sports Company*, 11 Ariz.App. 575, 466 P.2d 794 (1968), which states that acts amounting to misconduct reflecting bad faith, not merely inadvertence, mistake or negligence, are required to support a claim that there was a defalcation of some fiduciary duty. In a previously filed motion to dismiss, ADV Doc. No. 5, the debtors have admitted that:

> "In the instant matter, the debtor's conduct constituted at worst, inadvertence, mistake or negligence in not realizing that an application to employ himself as a legal counsel to the plaintiffs needed to be filed and approved, before he was entitled to legal fees."

Defendant's motion to dismiss, ADV Doc. No. 5, at page 3. However, the Court notes that *Kadish* actually held that the defendant's discharge in bankruptcy did not bar a charge of fiduciary defalcation where the claim was for unauthorized expenditure of corporate funds for non-corporate purposes. *Id.* 11 Ariz.App. at 579, 466 P.2d at 798. It therefore appears to the Court that the defendant's reliance on *Kadish* is misplaced.

From the plaintiffs' point of view, there existed a relationship between the defendant and the plaintiffs under which the plaintiffs' relied on the defendant's judgment and advice. What is less clear is whether this is technically a "fiduciary" relationship under the statute and how it was created. Here the plaintiffs have several theories. All of the theories are an attempt to overcome this Court's decision of *In re Reeves*, 124 B.R. 5 (Bankr.D.N.H.1990), in which I interpreted

section 523(a)(4) to be limited to express trust arrangements. This reading of § 523(a)(4) left out an entire swath of fiduciary-like relationships imposed by statute or by common law.

Plaintiffs urge the Court to adopt the Third Circuit's decision in *Goldberg v. New Jersey Lawyers' Fund for Client Protection,* 932 F.2d 273 (3d Cir.1991), in which the Third Circuit found that client funds used for the purposes of representation fit within the narrow definition of fiduciary as contemplated by the Code and as interpreted by the *Reeves* decision. In fact the plaintiffs cite the *Reeves* decision for the proposition that a fiduciary relationship was formed when the defendant took possession of the $10,000 retainer when he undertook their legal representation.

Plaintiffs then go on to allege that there was a fiduciary relationship created by virtue of the defendant's position as a member of the Bar of the State of New Hampshire. According to the plaintiffs, the defendant's standing as a member of the Bar of the State of New Hampshire required him to abide by the Rules of Professional Conduct which they believe cast him in a fiduciary capacity as contemplated by 523(a)(4) and within the rationale of *Reeves.* The plaintiffs seek to bolster this position by noting that in the October 11, 1991 Order directing the defendant to return the $10,000 retainer, I said that "present practice among members of the New Hampshire is to place disputed attorney fees in a trust account until such time as the dispute is resolved" and in this regard they cite the New Hampshire Rules of Professional Conduct, Rule 1.15(c); see also New Hampshire Supreme Court Rule 50. It is the plaintiffs' conclusion that the October 31, 1991 disgorgement Order made the defendant a fiduciary requiring him to create a separate trust account for the $10,000 for the benefit of plaintiffs' estate. Plaintiffs' Mem-

orandum of Law in Support of Creditor's Motion to Find Debt Nondischargeable at page 4. Plaintiffs further contend that since defendant never placed the $10,000 in a separate trust account for the benefit of the Duceys, that is a breach of a fiduciary duty.

## Discussion

■ In this district, the decision of *In re Reeves,* 124 B.R. 5 (Bankr.D.N.H.1990), sets out the relevant definitions of defalcation and fiduciary capacity. In the *Reeves* decision, I interpreted *Davis v. Aetna Acceptance Company,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), which relied on *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844). In *Reeves* I wrote that:

> Under that statutory provision [523(a)(4)], the debtor if determined to be such 'fiduciary' can have his debt nondischarged not only in terms of fraud or willful injury actions but also on the grounds of 'defalcation' of a fiduciary. As the case law defines this concept, defalcation can be shown by simply proving that a fiduciary failed to return property or account for same, even though no fraud, embezzlement, or even misappropriation on the part of the fiduciary is shown. See, e.g., *In re Selenske,* 103 B.R. 200, 204 (Bankr.E.D.Wisc.1989); *In re Crosswhite,* 91 B.R. 156, 160 (Bankr.M.D.Fla.1988). In short, 'innocent' conduct can constitute defalcation.

*Reeves,* 124 B.R. at 6.

■ The other element that must be satisfied to hold this debt nondischargeable is that the defendant was in some kind of fiduciary capacity *vis a vis* the plaintiffs. In *Reeves* I concluded that the Supreme Court's *Davis* and *Chapman* decisions "make it clear that technical trusts, not implied trusts, are those that lead to a nondischargeable debt." [1]

---

1. As the Court in *In re Stokes,* 142 B.R. 908, 909–10 n. 2 (Bankr.N.D.Ca.1992) observed:

    The cases usually refer to express, *technical* or *statutory* trusts. The term "technical trusts" was first used in this context by the U.S. Supreme Court in *Chapman v. Forsyth,* 43 U.S. 202, 208, 11 L.Ed. 236 (1844). It appears that the Court was referring to true or formal trusts by its use of this term, rather than those

    implied at law. *See In re Pedrazzini,* 644 F.2d 756, 758 n. 2 (9th Cir.1981); *In re Holmes,* 117 B.R. 848, 852 (Bankr.D.Md.1990).

    As defined "technical" is thus a redundancy, since its meaning is encompassed entirely by "express." 76 Am.Jur.2d *Trusts* Section 11, pg. 42 (1992). Since "technical trust" appears to be an obsolete term, and since it only serves to add to the confusion surrounding the mean-

*Reeves* at 7. Based on the Supreme Court decisions defining the contours of fiduciary capacity, I concluded in *Reeves* that the term "fiduciary in the Bankruptcy Code is narrower than word as used under state law." *Reeves* at 9. I then wrote: "I find compelling those decisions that recognize that the federal definition is vastly narrower than the state definition." *Id.*

■ Notwithstanding the fact that the *Reeves* decision concluded that the federal definition is narrower than the state definition of "fiduciary," state law nonetheless does inform the decision. For instance, as the Court in *In re Janikowski*, 60 B.R. 784, 788 (Bankr.N.D.Ill.1986) stated: "Federal bankruptcy law rather than state law is determinative when considering whether the debtor is a 'fiduciary' for dischargeability purposes. Nevertheless, state law is relevant to that inquiry." *Id.* citing *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982); *In re Pedrazzini*, 644 F.2d 756, 758 (9th Cir.1981); *In re Gagliano*, 44 B.R. 259 (Bankr.N.D.Ill.1984); *In re Loken*, 32 B.R. 205 (Bankr.W.D.Wis.1983); *see also In re Stokes*, 142 B.R. 908, 909–10 (Bankr.N.D.Cal.1992) ("while it [523(a)(4)] appears to cover the vast array of relationships which might be deemed a fiduciary or confidential under state law, as a matter of federal law only fiduciary relationships arising from express or statutory trust are covered by the statute. State law, however, governs in determining whether such trusts exist.").

In fact, the *Reeves* decision held out the possibility that the debtor might be held to be a fiduciary under certain state law concepts. As I then observed in *Reeves:*

> The federal law is aimed only at the express trust situation in which the debtor either expressly signified his intention at the outset of the transaction, *or was clearly put on notice by some document in existence at the outset, that he was undertaking the special responsibilities of a trustee to account for his actions over and above the normal obligations that contracting parties have to each other in a commercial transaction.* The concept of "incorporation by reference" of various

ing of this statute, reference to it should be

state law duties labeled as fiduciary obligations does not serve to further the purpose encompassed by § 523(a)(4) of the Bankruptcy Code.

*Reeves,* 124 B.R. at 10 (emphasis added).

Several New Hampshire state cases have held that attorneys are in a fiduciary relationship *vis a vis* their client and are held to a higher standard than parties in mere contractual relations such as was the case of the limited partners litigants in *Reeves*. New Hampshire Supreme Court decisions involving attorney disbarment have time and time again observed that an attorney-client relationship carries added responsibilities owing to the attorney's obligation to comply with the New Hampshire Rules of Professional Conduct. *Wehringer's case,* 130 N.H. 707, 720, 547 A.2d 252 (1988) ("it follows that in the context of the times in which we live, the significance of the ethical rules has become sharpened, and their underlying message, that the relationship of the lawyer to the client and the Court is one of fiduciary underpinnings, has become equally intensified. The relationship of the lawyer to the client and the Court is not determined by the rules governing the activities of the market place, but is determined by the higher standards provided by the Code and Rules."); *Broderick's case,* 104 N.H. 175, 179, 181 A.2d 647 (1962) ("The public and the bar of this state are entitled to be assured that the practice of law is a profession which demands that its members adhere to fiduciary standards of conduct and that the failure to do so will result in expeditious disciplinary action."); *Eshleman's case,* 126 N.H. 1, 4, 489 A.2d 571 (1985) ("It has long been established that 'any use of the client's money by the attorney for his own advantage is a breach of trust which cannot be tolerated....'") (citing *Wholey's case,* 110 N.H. 449, 450, 270 A.2d 609 (1970)). And as noted by the court in *In re Gans*, 75 B.R. 474, 490–91 (Bankr. S.D.N.Y.1987), "it is axiomatic that the attorney-client relationship is a fiduciary relationship. Where a debtor-attorney is found to have breached the fiduciary duty to the client, any debt arising within the fiduciary

abandoned.

relationship may be nondischargeable pursuant to Section 523(a)(4)."

■ I believe that in the present case the defendant had the requisite notice, as discussed in the *Reeves* decision, sufficient to establish a relevant fiduciary relationship under the federal statute. The defendant was on notice that he was placing himself into a fiduciary capacity by virtue of the New Hampshire Rules of Professional Conduct.[2] Further, attorneys practicing before the New Hampshire Federal District Court, of which the bankruptcy court is a unit, 28 U.S.C. § 157(a), also have notice that the New Hampshire Rules of Professional Conduct apply to attorneys appearing before the District Court. New Hampshire Federal District Court Rule 4(d).

Rule of Professional Conduct 1.15 provides:

(a)(1) Property of clients or third persons which a lawyer is holding in the lawyer's possession in connection with a representation shall be held separate from the lawyer's own property. Funds shall be deposited in one or more clearly designated trust accounts in accordance with the provisions of the New Hampshire Supreme Court Rules. All other property shall be identified as property of the client, promptly upon receipt, and safeguarded.

(2) Records shall be maintained by the lawyer of the handling, maintenance and disposition of all funds and other property of the client at any time in the lawyer's possession from the time of receipt to the time of final distribution and shall be preserved for a period of six years after final distribution of such funds or other property or any portion thereof. The lawyer shall maintain the minimum financial records specified in the New Hampshire Supreme Court Rules and shall comply with every other aspect of those Rules.

(b) Upon receiving funds or other property in which a client has an interest, a lawyer shall promptly notify the client. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

Rule 1.15(a)(1) explicitly states that: "property of clients ... which a lawyer is holding ... shall be deposited in one or more clearly designated trusts accounts in accordance with the provisions of the New Hampshire Supreme Court Rules." This Rule is an explicit statement that all attorneys in the State of New Hampshire are charged with knowledge that they hold the property of clients in trust and that money should be clearly designated in a separate trust account.

This is particularly true in the bankruptcy setting for professionals undertaking the representation of the debtor. Pursuant to Code section 329 and Rule 2017(a), payments or transfer to an attorney before the order for relief are subject to this Court's review as to whether or not the retainer paid exceeded the reasonable value of any such services provided. The combination of § 329 of the Code, Rule 2017(a), and New Hampshire Rule of Professional Conduct 1.15(a)(1) all require the defendant to segregate into a separate client trust account the $10,000 retainer pending this .Court's review of the reasonableness of the fee. Here, the defendant failed to segregate the funds into a separate client-trust account pending the Court's review of his affidavit of prepetition payments and admitted commingling the retainer with his firm's general operating account. During the trial, examination of the defendant elicited the following facts:

---

**2.** Under the New Hampshire Supreme Court's inherent rule-making authority to govern conduct of attorneys appearing before the Court, N.H.Rev.Stat.Ann. § 490:4 (1983), the New Hampshire Supreme Court on January 16, 1986 adopted New Hampshire's Rules of Professional Conduct which became effective on February 1, 1986.

Q. What did you do with it, where did you put it if anywhere? [The $10,000 retainer]

A. I deposited into my office's account.

Q. And your office account is what, your general co-mingling with other funds of your own personal funds?

A. My personal funds?

Q. Alright, when you say your office account, is that a trust account when you say your office account?

A. The office account was the office account of the Doherty Professional Association which was organized as a New Hampshire corporation, it was deposited into that account.

Q. When you deposited that $10,000 what period of time would that be that you received the money and made the deposit?

A. It would have been between the period of February 15th and the end of February 1991.

Q. Now this account that you say office account, what items get paid out of that office account?

A. Office expenses, office payroll.

Q. Now when you receive funds from clients do they all go into the office account?

A. It depends upon the basis upon which I received the funds from a client.

Q. That's my point. The $10,000 that you received that you deposited in your office account, did you tell the Duceys that those funds would be spent by you immediately?

A. The Duceys understood when they retained me that the total cost associated with their individual chapter 11 was going to be $15,000. The $10,000 was the first payment they made me and they had made me a promise they would pay the additional $5,000 as soon as possible.

The case of *In re Stokes*, 142 B.R. 908 (Bankr.N.D.Cal.1992), is relevant for purposes of the decision before the Court. *Stokes* involved a chapter 7 petition by a debtor-attorney who was subsequently sued by one of his former clients under § 523(a)(4). In *Stokes*, the nondischargeability claim was based on the attorneys' professional negligence in failing to serve a complaint within a three year limitation period established by the California Code of Civil Procedure which resulted in the loss of the plaintiff's personal injury case. Judge Newsome observed that "the legal theory upon which both are premised is that the defendants as attorneys owed a fiduciary obligation to the plaintiffs as their client; that they caused the value of plaintiff's cause of action to be lost through their negligence; that property lost through the negligence of a trustee falls within the sweep of 'defalcation' as that term is comprehended for purposes of § 523(a)(4) and that the debt created by their negligence must therefore be nondischargeable under that section." *Id* at 909 (citations omitted).

*Stokes* reasoned that just because one has fiduciary duties, that does not make one a trustee. Further, no California statute elevated the attorney-client relationship to one of trustee-beneficiary status which might arguably fit within the contours of § 523(a)(4). But in a footnote *Stokes* concluded that the California equivalent of New Hampshire Rule of Professional Conduct 1.15 is the sole exception to this general statement. As *Stokes* observed:

> The one exception is Rule 8–101 of the Rules of Professional Conduct of the State Bar of California, which requires all funds held by an attorney for the benefit of a client to be deposited into a segregated trust account. Since the defendants are not alleged to have held funds of any kind, this rule has no applicability here.

*Stokes* 142 B.R. at 910, n. 3.

The defendant's attorney here admitted that he failed to deposit the retainer into a segregated trust account pending approval of his retention as attorney for the debtors-in-possession and the Court's § 329 review of the pre-petition retainer payment. Consistent with the reasoning of *Stokes* the Court concludes that New Hampshire Rule of Professional Conduct 1.15 is the kind of notice held out in the *Reeves* decision that in this

case makes the defendant a fiduciary of the plaintiffs for purposes of § 523(a)(4).

■ The defendant's attempt to elide Rule 1.15(a)(1) by claiming that the $10,000 was a "nonrefundable, earned-upon-receipt" retainer is a nonstarter. *In re Doors and More, Inc.*, 127 B.R. 1001 (Bankr.E.D.Mich.1991) (attorney who applied to represent debtor in bankruptcy action was required to deposit retainer received from debtor into client trust account and failure to do so violated both Code and Michigan state law); *In re Chapel Gate Apartments*, 64 B.R. 569 (Bankr.N.D.Tx.1986). In the case of *In re Hathaway Ranch Partnership*, 116 B.R. 208 (Bankr.C.D.Cal.1990), Judge Zurzolo concluded that an alleged "earned upon receipt" retainer was a non-starter in bankruptcy. He concluded that no matter how described, advance fee payments are property of the bankruptcy estate and not of the professional. "The debtor-in-possession, as a fiduciary to the bankruptcy estate, must maintain and account for all property of the estate to its creditors and to the Court," *Hathaway Ranch* at 217. In *In re Lee Way Holding Company*, 100 B.R. 950 (Bankr.D.Oh.1989), the Court stated that "the requirement of full disclosure arises from the fiduciary obligation that an attorney ultimately employed in a bankruptcy proceeding *owes to the Court.*" *In re Lee Way Holding Company*, 100 B.R. at 956 (emphasis added).

Further support for nondischargeability is supplied by New Hampshire Supreme Court Rule 50, which provides in relevant part:

B. All cash property of clients received by attorneys shall be deposited in one or more clearly designated trust accounts (separate from the attorney's own funds) in financial institutions. Any attorney depositing client funds into an out-of-state financial institution shall file a written authorization with the Clerk of the Supreme Court authorizing the Court or its agents to examine and copy such out-of-state account records. Under no circumstances may any attorney use out-of-state banks other than those located in Maine, Vermont or Massachusetts.

C. Only those retainer fees, that are refundable if not earned, and as to which the attorney has so informed the client, shall be deposited in the trust account(s) described above. These shall not be withdrawn from the account of the attorney or firm organization until earned. All other retainer fees may be deposited in the attorney's general operating account.

The New Hampshire Supreme Court applied New Hampshire Supreme Court Rule 50 in *Woiccak's Case*, 131 N.H. 735, 561 A.2d 1049 (1989). Although a disbarment action, the case has relevance for purposes of the present decision. In *Woiccak's Case*, the defendant-attorney admitted that he had improperly written checks against client trust accounts. *Id.* at 737, 561 A.2d 1049. The referee in *Woiccak's case* found that the client trust accounts had been used to pay operating expenses of the firm. *Id.* at 739, 561 A.2d 1049. In adopting the referee's findings and conclusions, the New Hampshire Supreme Court ruled that the respondent knew the client trust accounts were out of trust and that the funds were being converted for unauthorized purposes. *Id.* at 741, 561 A.2d 1049. In applying Supreme Court Rule 50, the New Hampshire Supreme Court wrote:

[W]e refuse to credit willful or negligent blindness as a mitigating circumstance which would justify a more lenient sanction. The respondent had the responsibility as a fiduciary, and particularly as the only partner licensed to practice law in this State, to ensure that the integrity of client trust accounts was being maintained.

The holding of *Woiccak's Case* confirms that the present defendant's actions in depositing the retainer into his firm's general operating account was a violation of his fiduciary duties established by New Hampshire Supreme Court Rule No. 50.

The Court concludes that the defendant's attempt to avoid the effect of New Hampshire Rule of Professional Conduct 1.15(a)(1) and Supreme Court Rule 50 fails because there is no such thing as a non-refundable "earned-upon-receipt" retainer in a bankruptcy proceeding where the party charged is representing the debtor.

The Court concludes the following: (1) that in the special relationship between an attorney and client, New Hampshire Rule of Professional Conduct 1.15 and New Hampshire Supreme Court Rule 50 are the kind of explicit notice that the *Reeves* decision indicated would put a debtor on notice that he or she would become a fiduciary for purposes of § 523(a)(4) of the Bankruptcy Code even though an express trust document was not executed; (2) that in accordance with Bankruptcy Code § 329 and Rule 2017(a), there is no such thing as a non-refundable, earned-upon-receipt retainer for an attorney undertaking representation of a debtor; (3) that the defendant's failure to segregate into a separate client-trust account the retainer pending approval of his application for retention and final orders approving fees claimed under § 330 was a defalcation; and (4) that the defendant's failure to account and return the retainer when it was determined that he was not entitled to any fees for his legal services confirms and further establishes the defalcation by the defendant.

Accordingly, a separate final judgment shall issue determining the defendant's obligation to the plaintiffs is nondischargeable.